IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ZACHARY MORGAN, on behalf of himself
and all others similarly situated,

                        Plaintiff,                      OPINION AND ORDER

    v.

                                                     19-cv-27-wmc

CRUSH CITY CONSTRUCTION, LLC,

                        Defendant.

---

In this putative class and collective action, plaintiff Zachary Morgan brings suit against defendant Crush City Construction, LLC ("Crush City"), alleging violations of state law and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Before the court is plaintiff's motion for conditional certification of the FLSA collective action and authorization of notice to similarly situated persons. (Dkt. #19.) Subject to one modification to plaintiff's proposed notice, the court will grant plaintiff's motion for the reasons discussed below.

ALLEGATIONS OF FACT[1]

Defendant Crush City is a privately-owned construction company. Crush City employs approximately one-hundred "technician employees" performing the same basic duties -- a group that includes both "technicians" (also known informally as "laborers") and "foremen" (also known as "crew leaders"). While foremen are more senior than

---

[1] For the purposes of conditional certification, the court draws the relevant facts from "the complaint and any affidavits that have been submitted." *Bitner v. Wyndham Vacation Resorts, Inc.*, 301 F.R.D. 354, 357 (W.D. Wis. 2014) (quoting *Austin v. CUNA Mut. Ins. Soc'y*, 232 F.R.D. 601, 606 (W.D. Wis. 2006)). Any factual disputes are resolved in plaintiff's favor. *See id*.

technicians, both positions are hourly and non-exempt. Technician employees are assigned to one of six departments -- leafguard gutters, roofing, decking, addition and remodel, siding, windows and doors -- with each department consisting of different "crews."

Named plaintiff Zachary Morgan worked at Crush City as a technician employee from May 2017 until September 2018. The Crush City headquarters -- known as the "shop" -- is located in Baldwin, Wisconsin. Technician employees are also assigned to work at various jobsites across Wisconsin and Minnesota. These jobsites are typically forty-five minutes to two hours away from the shop.

All technician employees are subject to various written policies established by Crush City, including a "Company Manual," which provides in relevant part that "vehicles other than Company-owned vehicles . . . used to travel to and from job sites . . . do not qualify" for mileage reimbursement and that employees "are encouraged to use [Crush City's] designated parking lot . . . . Please lock your car each day . . . ." (Walcheski Decl., Ex. 6 (dkt. #23-6) 11, 28.)

Crush City also has a written "Drive Time Policy," which provides in relevant part that:

> [Crush City] . . . has GPS units in all vehicles to review your recorded times for verification and timekeeping procedures . . . .
> Drive Time is Allowable:
>   1. Pulling a trailer to a jobsite -- Driver Only
>   2. Attending a scheduled meeting at the shop then traveling to the jobsite -- Driver & Rider
>   3. Driving from the shop to jobsite after receiving instructions or picking up material -- Driver Only
>   4. Driving from the shop to jobsite after loading company vehicle -- Driver Only
>   5. Driving from jobsite back to the shop to unload material

2

> -- this should be performed the following day if possible
> 6. Driving from supplier (store) on way to the jobsite after leaving the shop
> 7. Driving from home to shop with material that needs to be disposed of in a dumpster
>
> Drive Time Not Allowable:
> 1. Driving from home to the shop and/or driving from shop to home (unless as stated above)
> 2. Riders in vehicles, if they did not assist with loading vehicle or attend a scheduled meeting at the shop
> 3. Driving from home and picking up rider at rideshare and driving to jobsite
> 4. Driving to the shop to pick-up other crew member
> 5. Driving from home directly to jobsite
> 6. Driving from jobsite directly to home, with or without material
> 7. Driving from jobsite to shop to drop off crew member

(Walcheski Decl., Ex. 8 (dkt. #23-8).)

According to plaintiff, Crush City also told its technician employees that they needed to report to the shop or a rideshare to carpool in company-owned vehicles to and from the jobsite. While at the shop or rideshare, the employees might have formal or informal meetings or load/unload materials. Plaintiff alleges that Crush City (contrary to its written policy) instructed its technician employees to only record travel time spent *actually driving* a company-owned vehicle and only while hauling materials to/from the shop and the jobsite. This meant that travel time as a rider was not compensated and travel time as a driver was not compensated unless materials were being hauled. Morgan was subject to all of the Crush City's drive time policies described above.

Additionally, Crush City provides employees with periodic performance bonuses. According to plaintiff, these bonuses are based on the prior month's performance and are made pursuant to established performance standards that are announced to the technician

3

employees to encourage and reward productive work. Crush City did not include these bonuses when calculating technician employees' regular rate of pay for overtime compensation purposes. Morgan received three bonuses during his employment, which were not included in Crush City's calculations of his regular rate of pay.

OPINION

I. **Legal Standard**

The FLSA provides that an employee may bring an action on behalf of himself and "other employees similarly situated." 29 U.S.C. § 216(b). "Although § 216(b) does not explicitly require the district court to certify a collective action under the FLSA, . . . the duty is implicit in the statute and the Federal Rules of Civil Procedure." *Spoerle v. Kraft Foods Glob., Inc.*, 253 F.R.D. 434, 438 (W.D. Wis. 2008).

A similarly situated employee must opt-in to participate in the proposed collective action. *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). Because of this requirement, "a representative plaintiff must be able to inform other individuals who may have similar claims that they may join his lawsuit." *Austin v. CUNA Mut. Ins. Soc.*, 232 F.R.D. 601, 605 (W.D. Wis. 2006). District courts have the discretion to facilitate and regulate this notification process. *Id.*

In light of both the court's duty to certify a collective action and its discretion to regulate notice to potential collective members, many courts, including this one, have

4

applied a two-step approach to certifying FLSA collective actions. *See Austin*, 232 F.R.D. at 605. At the first step, the court determines whether to authorize notice to allegedly similarly situated employees. *See id*. To meet its burden, a plaintiff "need only make 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Bitner v. Wyndham Vacation Resorts, Inc.*, 301 F.R.D. 354, 357 (W.D. Wis. 2014) (quoting *Austin*, 232 F.R.D. at 605). If this burden is satisfied, then the court conditionally certifies a collective action and authorizes notice to potential collective members. *See id.* After the close of discovery, a defendant may move the court for decertification of the conditional collective. *See id.* At this second step, "the court determines whether the plaintiffs are *in fact* similarly situated to those who have opted in." *Id.* (quoting *Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 629 (W.D. Wis. 2009)).

Here, defendant urges the court to collapse the two steps and apply an intermediate standard because, it argues, "considerable discovery has already taken place." (Def.'s Opp'n (dkt. #34) 18-19.) Specifically, defendant points out that the parties have taken five depositions and exchanged almost two thousand documents. (*Id.* at 19.) This court has previously recognized that such an intermediate standard may be appropriate where sufficient discovery on the specific issue of whether the putative collective is similarly situated has occurred. *Freeman v. Total Sec. Mgmt.-Wisconsin, LLC*, No. 12-cv-461-wmc, 2013 WL 4049542, at *4 (W.D. Wis. Aug. 9, 2013). However, the focus of the inquiry is not on the *quantity* of discovery that has occurred in the case; rather, the focus is on plaintiff's opportunity to conduct discovery "into the matters that are most useful to

5

establishing conditional certification." *Id.*

As to this inquiry, plaintiff persuasively points out that: he has not yet issued any written discovery to defendant; he has only taken two of the five depositions to date; *none* of the documents produced by defendant provide information about the putative collective (1561 relate only to Morgan, the rest relate to defendant's insurance policies); and he does not possess the names or contact information of members of the putative collective. Given that plaintiff has only had a minimal opportunity to conduct discovery into the putative collective action, therefore, an intermediate standard is not appropriate here.[2]

## II. Analysis

Enacted in 1938, the FLSA established basic wage and hour standards. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005) (citing 29 U.S.C. § 201 *et seq.*). For hours worked in excess of forty, the FLSA generally requires employers to compensate its employees "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Here, plaintiff Morgan alleges that he and other technician employees were the victims of two common policies that violated the FLSA. *First*, plaintiff claims that Crush City's practices effectuated a policy that deprived its technician employees,

---

[2] Defendant also argues that the court should deny plaintiff's request for conditional certification because Zachary Morgan is not similarly situated to other employees and because individualized inquiries will predominate. However, these considerations are generally considered at the second stage of FLSA certification. In light of the court's decision not to collapse the two stages, it will reserve consideration of defendant's more fact-specific arguments until "a more detailed factual record" is available for review. *See Austin*, 232 F.R.D. at 606 ("Defendant's arguments about the predominance of individualized inquiries and the dissimilarities between plaintiff and other employees are properly raised after the parties have conducted discovery and can present a more detailed factual record for the court to review.").

including Morgan, of compensable travel time for hours worked in excess of forty in violation of the FLSA.[3] Plaintiff has requested that the court authorize notice to the following "collective":

> Travel Time Collective: All hourly-paid, non-exempt Technician Employees in positions as Laborer, Technician, Foreman, and Crew Leader who were employed by Defendant within the three (3) years prior to this action's filing who have not been compensated for all hours worked in excess of forty (40) hours in a workweek as a result of Defendant's failure to compensate said employees for compensable travel time during the workday.

(Pl.'s Mot. (dkt. #19) 1.)

*Second*, plaintiff alleges that Crush City failed to calculate non-discretionary bonuses into technician employees' regular rate of pay for overtime, resulting in underpayment, and that Morgan and other technician employees were victims of this common policy. Plaintiff has requested that the court authorize notice to the following "collective":

> Non-Discretionary Compensation Collective: All hourly-paid, non-exempt Technician Employees in such positions as Laborer, Technician, Foreman, and Crew Leader who were employed by Defendant within the three (3) years prior to this action's filing who have not been compensated for all hours worked in excess of forty (40) hours in a workweek at the proper, correct, and/or lawful overtime rate of pay as a result of Defendant's failure to include all non-discretionary forms of compensation, such as performance bonuses, in said

---

[3] For hours worked within forty in a workweek, the FLSA only requires an employer to compensate an employee not less than the minimum wage. *See* 29 U.S.C. § 206(a). Therefore, an employer's failure to pay its employee at his regular rate of pay for compensable hours worked within forty does not violate the FLSA *unless* such failure results in payment below the minimum wage. *See id.* Plaintiff does not allege that Crush City's travel time policy resulted in a rate of pay less than the minimum wage; instead, he appropriately focuses on Crush City's failure to fully compensate for all hours worked *in excess of forty* due to its travel time policy.

7

employees' regular rates of pay for overtime calculation purposes.

(Pl.'s Mot. (dkt. #19) 1.) For the reasons that follow, the court finds that plaintiff has made an adequate factual showing that he and the other putative plaintiffs in both collectives were victims of a common policy that violated the law.

### A. Travel Time

An employer who "suffer[s] or permit[s]" an employee to work in excess of forty hours in a workweek is generally required to compensate that time "at a rate of not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. §§ 203(g), 207(a). Although the FLSA does not define "work" or specify what hours count as compensable work time, *see IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005) (citing 29 U.S.C. § 201 *et seq.*), the Portal-to-Portal Act provides guidance as to what travel time is compensable, *see* 29 U.S.C. § 254. Under the Act, an employee's ordinary commute to and from the workplace is generally not compensable work time. *See* 29 U.S.C. § 254(a); 29 C.F.R. § 785.35. However, travel time that is "all in the day's work" may be compensable. *See* 29 U.S.C. § 254(a); 29 C.F.R. § 785.38. Specifically, the regulations provide that:

> Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked. Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice . . . .

29 C.F.R. § 785.38.

In this case, plaintiff claims that technician employees routinely engaged in compensable travel time, but that it was Crush City's practice not to compensate for that time unless the employee was the driver and was hauling material. For its part, defendant argues that plaintiff failed to present even modest evidence that Crush City "required all of its technicians across all departments to report to the shop both in the morning and after finishing at the job site every day." (Def. Opp'n (dkt. #34) 21.) But this overstates plaintiff's burden. An employer does not have to *require* work for it to be compensable; the work need only be "suffered or permitted." 29 C.F.R. § 785.11. An employer that knows or has reason to know that an employee is working cannot sit back and accept the benefits of the work without compensating for it. §§ 785.11, 785.13. If an employer does not want work performed, it has a duty "to exercise its control and see that the work is not performed." § 785.13. Therefore, the question is not whether Crush City *required* technician employees to engage in compensable work before and after their work at the jobsite; rather, it is whether Crush City had a policy or practice of suffering or permitting such work and failing to pay for it.

Here, plaintiff has alleged three interlocking policies and practices to meet his modest burden. First, plaintiff points to testimony from at least three technician employees (including Morgan) that Crush City instructed employees to stop at the shop regularly before going to the jobsite and/or after finishing at the jobsite. (*See* Pl.'s Br. (dkt. #20) 10-11.) Plaintiff also argues that Crush City's written policies of encouraging employees to park in the Crush City parking lot, the policy of not reimbursing employees who drive their own vehicles, and Crush City's use of GPS in company-owned vehicles to

9

track and verify the hours worked all incentivized employees to take company-owned vehicles to the job sites, which meant that they would meet at the shop or a rideshare at the beginning and ending of each workday. Second, plaintiff points to testimony provided by technician employees in depositions and declarations to show that that while at the shop or rideshare, technician employees would take meetings, load/unload material, and otherwise engage in work. (*See* Pl.'s Br. (dkt. #20) 11.) Third, plaintiff points again to the depositions and declarations to demonstrate that defendant told employees only to log travel time spent *actually driving* a company-owned vehicle while hauling materials to/from the shop to the jobsite. (*See* Pl.'s Br. (dkt. #20) 12-13.) The court also observes that Crush City's written "Drive Time Policy" is not fully consistent with the law and regulations on compensable travel time. For example, listed under allowable drive time is: "Driving from the shop to jobsite after loading company vehicle -- Driver Only." However, the regulations provide that when an employee reports to a place to pick up and carry tools, then travels to the place of work, that travel time -- regardless of whether driving or not -- is compensable. *See* 29 C.F.R. § 785.38.

Plaintiff also references a timesheet for Hunter Smith that shows his logged hours from October 2 through October 6, 2017. Compellingly, the entries for four of the five days show that Smith logged between fifteen minutes and an hour and a half of "shop time" in the morning, then after a blank period of forty-five minutes he restarted his timeclock at the jobsite. (*See* Walcheske Decl., Ex. 7 (dkt. #31-7) 2.) It is logical to infer that the blank forty-five minutes was time spent driving, time which was likely compensable. *See* 29 C.F.R. § 785.38 ("Where an employee is required to report at a

10

meeting place . . . to perform other work there . . . the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked . . . ."). According to the record, the timesheet was approved by Ben Miller -- Smith's supervisor -- suggesting that Smith's failure to record potentially compensable time was known to Crush City management. (*Id.*)

Considered together, plaintiff has presented sufficient evidence that Crush City knew that technician employees would regularly begin and/or end their day at the shop or a rideshare and would engage in work while there, and that Crush City failed to compensate employees properly for this travel time. As such, plaintiff has met its burden of making a "modest factual showing" that plaintiff and the putative collective "together were victims of a common policy or plan that violated the law." *Bitner*, 301 F.R.D. at 357.

### B. Bonuses

As noted above, the FLSA generally requires employers to compensate its employees "at a rate not less than one and one-half times the regular rate at which he is employed" for time worked in excess of forty hours in a workweek. 29 U.S.C. § 207(a)(1). Non-discretionary bonuses are included in calculating the employee's regular rate of pay. *See* 29 U.S.C. § 207(e); 29 C.F.R. § 778.208. "Bonuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay." 29 C.F.R. § 778.211(c).

Plaintiff points to two depositions of Crush City management employees to show that the bonuses were based on specific performance goals and were announced to employees at annual department meetings. (Larson Dep. (dkt. #31) 73-74; DeMotts Dep.

11

(dkt. #32) 36.) Further, Brenda DeMotts, Crush City's Office Manager, specifically testified that bonuses are not included in the time-and-a-half hourly rate calculation. (DeMotts Dep. (dkt. #32) 36.) This evidence is sufficient to meet plaintiff's burden, and the court will therefore conditionally certify a collective action with regard to plaintiff's bonus claim as well.

### C. Proposed Collectives and Notice

Defendant also argues that, if the court does grant conditional certification, it should make a number of changes to plaintiff's proposed collectives and notice. First, it argues that the class should be narrowed only to siding technicians (the department in which Morgan worked). However, the violations alleged by plaintiff were not limited only to the siding department. For example, Hunter Smith worked for both the siding and decking departments during his employment at Crush City, and his testimony suggested that the Crush City's drive time policy applied generally to technician employees and not just employees in one specific department. (*See* Smith Decl. (dkt. #22.) The testimony of two Crush City management employees about overtime calculations similarly suggested that the same calculations were used for all employees. (*See* Larson Dep. (dkt. #31) 73-74; DeMotts Dep. (dkt. #43) 36.)

Second, defendant argues that the collective should be limited to Morgan's dates of employment. The proposed notice in this case instead includes technician employees who were employed by Crush City within the three years of filing this lawsuit. However, the evidence produced by plaintiff suggests that Crush City's policies were general, and it would be reasonable to infer that they were applied beyond Morgan's dates of employment.

12

This court has regularly approved of FLSA notices that extend beyond the named plaintiff's dates of employment to include all potential claims within the statute of limitations. *See, e.g.*, *Kelly*, 256 F.R.D. at 629; *Bitner*, 301 F.R.D. at 358; *Foshinder-Bittorf v. SSM Health Care of Wisconsin, Inc.*, No. 11-CV-592-WMC, 2013 WL 3287634, at *4 (W.D. Wis. Mar. 21, 2013); *Berndt v. Cleary Bldg. Corp.*, No. 11-CV-791-WMC, 2013 WL 3287599, at *12 (W.D. Wis. Jan. 25, 2013). That being said, defendant correctly points out that, for members of an FLSA collective, the statute of limitations is counted from the date the member consents to be a party plaintiff. *See* 29 C.F.R. § 790.22(a)(2)(ii). The court therefore accepts defendant's amendment that the collective action extend only to those employed within the three years before the date of the *notice*, rather than the date of the lawsuit.

Third, defendant requests that the case caption be removed from the notice and replaced with the letterhead of plaintiff's counsel. Defendant argues that this is necessary to follow the Supreme Court's admonition that district courts avoid the appearance of "judicial endorsement of the merits of the action" in overseeing the notice-giving process. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989). While the concern is a legitimate one, the proposed notice does not give the appearance of judicial endorsement. The caption merely informs readers properly and accurately that the case is pending in federal court, which indeed it is. Moreover, the notice also states prominently that "THE COURT TAKES NO POSITION REGARDING THE MERITS OF PLAINTIFF'S CLAIMS OR DEFENDANT'S DEFENSES." The court will also deny defendant's request to print the notice on plaintiff's counsel's letterhead. The proposed notice references

13

plaintiff's counsel multiple times and states that they are the relevant point of contact for interested employees. In short, this court has never before implemented a letterhead requirement, and it sees no reason to depart from this practice here. *See, e.g.*, *Bitner*, 301 F.R.D. 354 (approving notice not on plaintiff's counsel's letterhead); *Foshinder-Bittorf*, 2013 WL 3287634 (same); *Bessy v. Per Mar Sec. & Research Corp.*, No. 17-CV-034-WMC, 2018 WL 1583297, at *1 (W.D. Wis. Mar. 30, 2018) (same).

Fourth, defendant argues that the notice should not be posted at Crush City's work locations and should only be mailed. However, this court has previously held that "requiring defendants to post notice in the workplace is neither unnecessary nor overly intrusive." *Freeman v. Total Sec. Mgmt.-Wisconsin, LLC*, No. 12-CV-461-WMC, 2013 WL 4049542, at *11 (W.D. Wis. Aug. 9, 2013). On the contrary, it is recognized as an effective method to provide notice to potential members of the collective action.

Fifth and finally, defendant argues that the notice is misleading and that it should be amended to state that putative collective members: (1) may be required to participate in the action; (2) may be liable for defendant's attorneys' fees; and (3) may be liable for costs. None of these amendments are necessary here. First, as plaintiff points out the proposed notice already states: "If you join this action, you may be required to provide information or otherwise participate in it." (Pl.'s Reply, Ex. 1 (dkt. #36-1) 4.) Second, this court has previously declined to require a statement regarding liability for attorneys' fees, noting that "the statute is silent with respect to fee shifting for prevailing defendants and . . . the warning would chill participation in collective actions." *Austin*, 232 F.R.D. at 608. Third, courts have generally not required a statement of potential costs in an FLSA

notice, and defendant offers no compelling reason for this court to so do here. *See Hall v. U.S. Cargo & Courier Serv., LLC*, 299 F. Supp. 3d 888, 898 (S.D. Ohio 2018) (declining to require plaintiff to include language about potential liability for costs in FLSA notice).

Accordingly, the court will accept plaintiff's proposed collective actions (dkt. #19), but require plaintiff to amend the collective descriptions to include those employed by defendant within the three years before the date the *notice* is sent, rather than the three years before the date the action was filed. The court also directs plaintiff to amend his revised proposed notice (dkt. #36-1) to reflect this change, but otherwise accepts the proposed notice.

ORDER

IT IS ORDERED that plaintiff's motion for conditional certification of the FLSA collective action and authorization of notice to similarly situated persons (dkt. #19) is GRANTED subject to plaintiff amending the notice to include only those employed by defendant three years before the date the notice is sent.

Entered this 3rd day of January, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge