# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

ZACHARY MORGAN on behalf of
himself and all others similarly situated,

                Plaintiff,

v.

CRUSH CITY CONSTRUCTION, LLC
879 U.S. Highway 63
Baldwin, Wisconsin 54002,

                Defendant.

Court File No.: 3:19-cv-00027 (WMC)

**DEFENDANT'S MEMORANDUM OF
LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION AND
AUTHORIZATION OF NOTICE
PURSUANT TO FED. R. CIV. P. 23**

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 3

   I.   CASE SUMMARY & PROCEDURAL POSTURE. .............................................. 3

   II.   CRUSH CITY'S WRITTEN DRIVE TIME POLICY. ........................................... 4

   III.   CRUSH CITY'S ALLEGED "UNWRITTEN" POLICIES. ................................... 5

LEGAL STANDARD ................................................................................................ 6

ARGUMENT ............................................................................................................. 8

   I.   PLAINTIFF'S PROPOSED CLASSES FAIL TO SATISFY MULTIPLE
      REQUIREMENTS OF FED. R. CIV. P. 23 AND CANNOT BE CERTIFIED. .... 8

      A.   Plaintiff Cannot Establish Commonality of the Travel Time Class Because
          Plaintiff's "Common Question" Cannot Generate a "Common Answer." ........ 8

      B.   Plaintiff Zachary Morgan's Claims are Not Typical of the Classes He Seeks to
          Represent. ...................................................................................................... 18

      C.   Plaintiff Zachary Morgan is an Inadequate Class Representative. ................... 19

      D.   Morgan's Summary Judgment Motion Disqualifies Him as a Class
          Representative. ............................................................................................... 24

      E.   Plaintiff's Counsel Has Not Demonstrated the Requisite Experience with Rule
          23 Class Actions, nor has Counsel Demonstrated That They Will Fairly and
          Adequately Represent the Classes. ................................................................. 25

   II.   PLAINTIFF FAILS TO SATISFY BOTH PRONGS OF FED. R. CIV. P.
      23(B)(3). ............................................................................................................ 28

      A.   No Common Questions of Law or Fact Predominate Over the Class Claims. 28

      B.   A Class Action is not a Superior Means of Adjudicating the Claims Presented
          by Plaintiff. ................................................................................................... 35

   III.   RULE AGAINST ONE-WAY INTERVENTION PRECLUDES CLASS
      CERTIFICATION. .............................................................................................. 42

   IV.   PLAINTIFF'S CLASS DEFINITIONS ARE IMPROPER FAILSAFE CLASS
      DEFINITIONS. ................................................................................................... 44

CONCLUSION ......................................................................................................... 46

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974) .................................... 42

*Andrews v. Chevy Chase Bank*, 545 F.3d 570, 577 (7th Cir. 2008) ................................ 35

*Arreola v. Gondinez*, 546 F.3d 788, 794 (7th Cir. 2008) .................................................... 8

*Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360 (7th Cir. 2015) ............................................ 6

*Bitner v. Wyndham Vacation Resorts, Inc.,* No. 13-cv-451-wmc, 2016 WL 7480428 (W.D. Wis. Dec. 29, 2016) .............................................................. 9, 17, 19, 36

*Blihovde v. St. Croix*, 219 F.R.D. 607 (W.D. Wis. 2003) ................................................ 44

*Boelk v. AT&T Teleholdings, Inc.*, No. 12-cv-40, 2013 WL 239066 (W.D. Wis. Jan. 10, 2013) ................................................................................................................. 9, 15, 16

*Boyd v. Meriter Health Serv. Empl. Retirement Plan*, No. 10-cv-426-wmc, 2012 WL 12995302 (W.D. Wis. 2012) ............................................................................................ 25

*CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721 (7th Cir. 2011) .......... 18

*Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1058 (7th Cir. 2016)

*Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913 (7th Cir. 2011) ...................................................................................................................... 26

*Davidson v. Citizens Gas & Coke Utility*, 238 F.R.D. 225 (S.D. Ind. 2006) ............. 20, 22

*Drake v. Aerotek, Inc.*, No. 14-cv-216-bbc, 2015 WL 6554592 (W.D. Wis. Oct. 29, 2015) ...................................................................................................................... 15

*East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395 (1977) ........................... 18

*Ervin v. OS Restaurant Serv., Inc.*, 632 F.3d 971, 976 (7th Cir. 2011) ............................ 41

*Espenscheid v. DirectSat USA, LLC*, No. 09-cv-625, 2011 WL 2009967 (W.D. Wis. May 23, 2011) ...................................................................................................................... 36

*In re Goldchip Funding Co.,* 61 F.R.D. 592 (MD. Pa. 1974) .......................................... 20

*International College of Surgeons*, 522 U.S. 156 (1997) .................................................. 37

*Kieninger v. Crown Equip. Corp.*, 924 N.W.2d 172 (Wis. 2019) ............................. 14, 34

*Kirkpatrick v. Ironwood Commc'ns, Inc.*, No. C05-1428JLR, 2006 WL 2381797 (W.D. Wash. Aug. 16, 2006) ................................................................................................ 22

*Kneipp v. Re-Vi Design, LLC.*, No. 17-cv-857, 2019 WL 1244903 (W.D. Wis. Mar. 18, 2019) ..................................................................................................... 34, 37, 39

*Maddox & Starbuck Ltd. v. British Airways*, 97 F.R.D. 395 (S.D.N.Y. 1983) ............... 22

*McCaster v. Darden Restaurants, Inc.*, 845 F.3d 794 (7th Cir. 2017) ...................... 45, 46

*Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802 (7th Cir. 2012) ............. 7, 29, 45

*Miller v. ThedaCare Inc.*, 2018 WL 472818 (E.D. Wis. Jan. 18, 2018) ............... 9, 12, 13

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir. 2001) .... 35

*Orr v. Shicker*, 953 F.3d 490 (7th Cir. 2020) ................................................................ 8

*Parko v. Shell Oil Co.*, 739 F.3d 1083 (7th Cir. 2014) .................................................. 29

*Peritz v. Liberty Loan Corp.*, 523 F.2d 349, 354 (7th Cir. 1975) .................................... 42

*Sloane v. Gulf Interstate Field Servs., Inc.*, No. 4:16-cv-01571, 2017 WL 1105236 (M.D. Pa. Mar. 24, 2017) ........................................................................................... 21

*Spano v. Boeing Co.*, 633 F.3d 574 (7th Cir. 2011) ..................................................... 18

*Stampley v. Altom Transport, Inc.*, 958 F.3d 580 (7th Cir. 2020) ...................... 24, 42, 43

*Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672 (7th Cir. 2001) ...................... 8, 14, 30

*Torres v. Nutrisystem, Inc.*, 289 F.R.D. 587 (C.D. Cal. 2013) ......................................... 9

*Trotter v. Klincar*, 748 F.2d 1177 (7th Cir. 1984) ........................................................ 6, 7

*Weisman v. Darneille*, 78 F.R.D. 669 (S.D.N.Y. 1978) .................................................. 21

*Wicke v. L&C Insulation, Inc.*, No. 12-cv-638-wmc, 2014 WL 2957434 (W.D. Wis. July 1, 2014) ................................................................................................................. 38

*Wiesmuller v. Kosobucki*, 513 F.3d 784, 787 (7th Cir. 2008) ............................................ 43

*Williams v. Balcor Pension Investors*, 150 F.R.D. 109 (N.D. Ill. 1993) ......................... 28

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012) .................................. 45

**Statutes & Codes**

28 U.S.C. § 1367(c) ...................................................................................................... 37

Wis. Stat. § 109.03 .................................................................................................. 13, 30

Wis. Admin. Code. § DWD 272.12(1)(a)(1) ............................................................... 2

Wis. Admin. Code. § DWD 272.12(g) ....................................................................... 17

Wis. Admin. Code. § DWD 272.12(1)(e)(1) .............................................................. 14

**Rules & Regulations**

Fed. R. Civ. P. 23(a) ................................................................................................ 6, 7

Fed. R. Civ. P. 23(a)(2) ............................................................................................... 8

Fed. R. Civ. P. 23(a)(3) ............................................................................................. 18

Fed. R. Civ. P. 23(b) ................................................................................................. 29

Fed. R. Civ. P. 23(b)(3) ............................................................................. 7, 28, 29, 35

Fed. R. Civ. P. 23(b)(3)(D) ....................................................................................... 35

Fed. R. Civ. P. 23(g) ................................................................................................. 25

Fed. R. Civ. P. 56(b) ................................................................................................. 43

## INTRODUCTION

On January 11, 2019, Plaintiff Zachary Morgan ("Plaintiff") initiated a proposed collective and class action against Crush City Construction, LLC ("Crush City") alleging multiple wage claims, one of which presents a matter of first impression under Wisconsin law.   Having obtained conditional certification, Plaintiff sent notice to 154 putative collective class members.   Only twelve timely joined the litigation.   Plaintiff then abandoned the collective action and moved to amend his complaint to add six of the twelve opt-in plaintiffs as named plaintiffs.   Of the remaining eight opt-in plaintiffs, two have withdrawn their consents to sue, and six, having filed consents to sue which haven't been withdrawn, have presumably left the case and are no longer pursuing their claims.

Plaintiff now moves for certification under Fed. R. Civ. P. 23, presenting depthless and conclusory arguments in a half-baked attempt to certify two (2) Wisconsin state law Classes—Classes which are, by their very definitions, failsafe classes incapable of certification under Fed. R. Civ. P. 23.   In his argument in support of certification Plaintiff first attempts to pinpoint a "common policy" at issue—identifying Crush City's written drive time policy as common to the Class—yet admits in the first pages of his brief that various other liability theories actually rely on separate "unwritten" policies which do not apply to all Class members equally, and which Plaintiff himself debunked *in his own testimony*.   Plaintiff has also failed to present to the Court any efficient or workable means of determining liability and calculating damages on a classwide basis, likely because no efficient or workable means exist.   Because Wisconsin's Administrative Code directs the start of an employee's compensable workday depends on when the employee first engages

1

in work which is sufficiently physically or mentally exerting and controlled or required by the employer for the benefit of the employer's business (*see* Wis. Admin. Code. § DWD 272.12(1)(a)(1)), the Court would be required to hold "mini trials" for each class member to determine whether each employee had engaged in physically or mentally exerting work pre- and/or post-travel, which was controlled or required by Crush City, such that the employee's travel time should be compensable. Then, because no data exists which allows damages to be determined in an efficient manner, a factfinder would then have to determine damages owed to each Class member, from the Class member's testimony, on a member-by-member basis. Courts within the Western District routinely decline to certify Rule 23 class actions where such individual inquiries exist.

At the end of the day, however, Plaintiff simply fails to carry his burden of proof regarding the propriety of Rule 23 class certification for the claims at hand. Try as he might to gloss over Rule 23's weighty requirements, the record before the court simply does not support a finding that common issues of law and fact exist, that a Rule 23 class action is the superior means of adjudicating the case at hand, or that Plaintiff and his counsel will adequately represent the Classes. In light of these deficiencies, Crush City asks the Court to deny Plaintiff's Motion for Class Certification and Authorization of Notice Pursuant to Fed. R. Civ. P. 23 [ECF No. 66–67] ("Plaintiff's Motion for Certification") and allow this case to proceed on a much more appropriate grounds—on an individual basis for the individual Plaintiff(s).

2

# BACKGROUND

## I.      CASE SUMMARY & PROCEDURAL POSTURE.

This action arises out of alleged underpayment of wages in violation of the Fair Labor Standards Act ("FLSA") and Wisconsin state wage statutes.  Specifically, Plaintiff, a former laborer and foreman for Crush City, alleges Crush City required its employees to "ride share" or travel to and from job sites, but did not compensate some of its hourly employees for their time spent traveling.  [ECF No.4, ¶¶ 50–74].  Plaintiff also claims that Crush City failed to compensate some employees properly by excluding non-discretionary compensation when computing employees' regular and overtime rates [ECF No.4 ¶¶ 75–84], but acknowledges Crush City has already compensated many of its employees for any such oversight. [ECF No. 56, Ex. A ¶¶ 112–15].

Plaintiff filed his initial Complaint and Consent to Join Form on January 11, 2019. [ECF No. 1].  On July 14, 2019, Plaintiff moved for conditional certification of a FLSA collective class.  [ECF Nos. 19–32].  On January 3, 2020, the Court granted Plaintiff's motion over Crush City's objections.  [ECF Nos. 36–37, 40].  Shortly thereafter, notice was sent to 154 FLSA collective members.  A total of twelve opt-in plaintiffs joined the action by the close of the notice period on February 29, 2020.  [ECF Nos. 6, 41–48].  Via the filing of Plaintiff's Second Amended Complaint, Plaintiff abandoned the conditionally-certified FLSA collective action as well as eight of the twelve opt-in plaintiffs.  [ECF No. 56].  Plaintiff intends for only six opt-in plaintiffs now remain to pursue individual causes of action, all of which Plaintiff seeks to add as named Plaintiffs for the purposes of pursuing individual FLSA claims.  [ECF No. 56].

3

Plaintiff now seeks to certify, and represent, two classes under Fed. R. Civ. P. 23 to pursue alleged violations of Wisconsin's wage laws.  Those classes are defined as:

> Travel Time Class: All hourly-paid, non-exempt Technician Employees in such positions as Laborer, Technician, Foreman, and Crew Leader who were employed by Defendant within the two (2) years prior to this action's filing who have not been compensated for all hours worked as a result of Defendant's failure to compensate said employees for compensable travel time during the workday.

> Non-Discretionary Compensation Class: All hourly-paid, non-exempt Technician Employees in such positions as Laborer, Technician, Foreman, and Crew Leader who were employed by Defendant within the two (2) years prior to this action's filing who received non-discretionary forms of compensation, such as goal, performance, and installation bonuses, and who have not been compensated for all hours worked in excess of forty (40) hours in a workweek at the proper, correct, and/or lawful overtime rate of pay as a result of Defendant's failure to include all such non-discretionary forms of compensation in said employees' regular rates of pay for overtime calculation purposes.

[ECF No. 66].

## II.    CRUSH CITY'S WRITTEN DRIVE TIME POLICY.

The Parties all agree that Crush City issued a written drive time policy to its non-exempt employees performing work on job sites.  This policy provided:

> **<u>Drive Time is Allowable:</u>**
> 1. Pulling a trailer to a jobsite – Driver Only
> 2. Attending a scheduled meeting at the shop and then traveling to the jobsite – Driver & Rider
> 3. Driving from the shop to jobsite after receiving instructions or picking up material – Whomever received instruction and/or picked up material
> 4. Driving from the shop to jobsite after loading company vehicle – Whomever loaded the vehicle, which should ONLY be the driver of the vehicle unless it takes two people to perform task
> 5. Driving from jobsite back to the shop to unload material – this should be performed the following day if possible
> 6. Driving from supplier (store) on way to the jobsite after leaving the shop

7. Driving from home to shop with material that needs to be disposed of in a dumpster

**Drive Time is Not Allowable:**
1. Driving form home to the shop and/or driving from shop to home (unless as stated above)
2. Riders in vehicles, if they did not assist with loading vehicle or attend a scheduled meeting at the shop
3. Driving from home and picking up rider at rideshare and driving to jobsite
4. Driving to the shop to pick-up other crew member
5. Driving from home directly to jobsite
6. Driving from jobsite directly to home, with or without material
7. Driving from jobsite to shop to drop off crew member

*See* ECF No. 76 ("Declaration of Martin Kappenman in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Kappenman Decl.")) ¶ 2, Ex. A.

## III.   CRUSH CITY'S ALLEGED "UNWRITTEN" POLICIES.

While Plaintiff alleges that Crush City enforced an unwritten policy requiring employees to "(1) report to its 'shop' before travelling to the jobsite at the beginning of the workday; and (2) return to its 'shop' from the jobsite at the end of the workday before travelling home," testimony from Plaintiff and putative Class members indicate that this is not the case. Plaintiff himself was routinely picked up from, and dropped off, not at Crush City's shop, but from jail. (Deposition of Zachary Morgan, ECF No. 29 ("Morgan Depo."), 21:14–20.) Plaintiff further testified that he believed Crush City employees who chose to ride share did not have to meet at the shop, but merely any location which would allow them to ride share with other crew members working at the same job site. ("Morgan Depo., 104:17-105:9.) These meeting places included various park and ride locations as well as the crew members' homes. ("Morgan Depo., 104:17-105:9) ("Q So sometimes you drive

to the shop, correct? A Or sometimes I would pick people up at park and ride or a house, their house."). Putative Class members also testified that they were not required to ride share, but were allowed to drive their company or personal vehicles between their homes and the job sites, and did not have to stop at Crush City's shop before and after each workday.[1] Thus, substantial testimony given by Plaintiff and putative Class members runs counter to Plaintiff's theme that Crush City enforced an unwritten policy requiring employees to report to its shop at the beginning and end of each workday.

## LEGAL STANDARD

Class certification is not automatic; a class may be certified only "if the trial court is satisfied, after a rigorous analysis, that the prerequisites for class certification have been met." *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015) (citing *Reliable Money Order, Inc. v. McKnight Sales Co., Inc*., 704 F.3d 489, 498 (7th Cir. 2013)). A plaintiff seeking certification has the burden of demonstrating that the class and proposed class representative meet these various prerequisites, which include the four prongs of Fed. R. Civ. P. 23(a) and one option under 23(b). *See* Fed. R. Civ. P. 23(a-b); *Trotter v. Klincar*,

---

[1] Deposition of Randy Lee Pressley, ECF No. 30 ("Pressley Depo."), 13:22–24, 15:4–10 ("Q And had you been on the company's insurance and been able to take the vehicle home, would you have been able to just leave from your home and go straight to the job site . . . A Yeah."); Deposition of Ryan Miller, ECF No. 64 ("Miller Depo."), 40:21–41:2 ("Q At any point in your employment with Lindus did you drive directly from your home to the job site or at the end of the day directly from the job site to your home? A Yes. Q How many times? A Oh, probably 30, 40 times."); (Pressley Depo., 15:11–15 (Q And you didn't take your own car to the job site during that time period? A I did once. Q And was that allowed? A Yeah.").

748 F.2d 1177, 1184 (7th Cir. 1984).  Fed. R. Civ. P. 23(a) provides that a class may be

certified only if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Fed. R. Civ. P. 23(b)(3), the 23(b) provision which applies to classes

seeking monetary damages, requires a finding that "questions of law or fact common to

class members predominate over any questions affecting only individual members, and that

a class action is superior to other available methods for fairly and efficiently adjudicating

the controversy."  Fed. R. Civ. P. 23(b)(3).  The Rules list four items relevant to a

determination of whether predominance and superiority under 23(b)(3) exist:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesireability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  Plaintiff alone has the burden of proving by a preponderance of

the evidence that the proposed classes and the proposed class representative meet the

requirements of Fed. R. Civ. P. 23(a) and (b).  *See Trotter v. Klincar*, 748 F.2d 1177, 1184

(7th Cir. 1984).  When deciding a motion for class certification a court may not "simply

assume the truth of the matters as asserted by the plaintiff," but must receive and examine

evidence to resolve material factual disputes.  *Messner v. Northshore Univ. Health Sys.*,

669 F.3d 802, 811 (7th Cir. 2012).  "Failure to meet any of [Rule 23's] requirements precludes class certification."  *Arreola v. Gondinez*, 546 F.3d 788, 794 (7th Cir. 2008). While the court typically need not delve into the merits of the case at the class certification stage, where Rule 23's criteria and merit concerns overlap, "the judge must make a preliminary inquiry into the merits."  *Szabo v. Bridgeport Machines, Inc*., 249 F.3d 672, 676 (7th Cir. 2001).

## ARGUMENT

I.  **PLAINTIFF'S PROPOSED CLASSES FAIL TO SATISFY MULTIPLE REQUIREMENTS OF FED. R. CIV. P. 23 AND CANNOT BE CERTIFIED.**

A.  ***Plaintiff Cannot Establish Commonality of the Travel Time Class Because Plaintiff's "Common Question" Cannot Generate a "Common Answer."***

Fed. R. Civ. P. 23's commonality requirement requires plaintiff to show that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  For commonality to exist, "Plaintiffs' claims 'must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'"  *Orr v. Shicker*, 953 F.3d 490, 499 (7th Cir. 2020) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  The Seventh Circuit has noted that "[t]he key to commonality is 'not the raising of common questions, but rather, the capacity of a class-wide proceeding to generate common answers apt to **drive the resolution of the litigation**.'" *Orr*, 953 F.3d at 498–99 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)) (emphasis added).  "The commonality standard requires that plaintiffs do more

8

than 'merely' demonstrate 'that they have all suffered a violation of the same provision of law[]' . . . Plaintiff must show that 'the class members have suffered the same injury.'" *Bitner v. Wyndham Vacation Resorts, Inc.,* No. 13-cv-451-wmc, 2016 WL 7480428, at *6 (W.D. Wis. Dec. 29, 2016) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–350 (2011)).   Commonality does not exist where "the answers to [the common] questions are likely to vary significantly among class members given [the] issues require individualized factual inquiries into the circumstances of each class member." *Torres v. Nutrisystem, Inc*., 289 F.R.D. 587, 592 (C.D. Cal. 2013).   Courts within this district have denied class certification where a Plaintiff is unable to demonstrate that the employer instituted a uniform policy and sought to enforce it.   *See Miller v. ThedaCare Inc*., No. 15-c-506, 2018 WL 472818 (E.D. Wis. Jan. 18, 2018) (finding plaintiffs' claim of a uniform policy was unsupported "speculation" and denying Rule 23 class certification of Wisconsin wage claims); *Boelk v. AT&T Teleholdings, Inc.*, No. 12-cv-40, 2013 WL 239066 (W.D. Wis. Jan. 10, 2013) (denying Rule 23 certification of Wisconsin wage claims where plaintiffs failed to provide evidence of a uniform policy).

>1.   <u>Plaintiff Fails to Identify and Prove the Existence of a Common, Uniform Policy.</u>

Here Plaintiff has identified for the Court one impermissibly- and broadly-defined common question applicable to the proposed Travel Time Class—"whether Defendant maintained a Travel Time Policy that, as written and as practiced, resulted in its failure to compensate its Technician Employees for all compensable travel time."   *See* Plaintiff's Omnibus Brief in Support of Motions, ECF No. 67 ("Pl.'s Brf.") at 31.   Plaintiff further

9

alleges that Crush City "required and incentivized its Technician Employees to: "(1) report to its 'shop' before travelling to the jobsite at the beginning of the workday; and (2) return to its 'shop' from the jobsite at the end of the workday before travelling home." Pl.'s Brf. at 2. However, Plaintiff has failed to demonstrate in any way that Crush City instituted this policy. For example, several current putative Rule 23 Travel Time Class members, as well as Crush City's Human Resources Manager, testified that employees' travel arrangements to and from job sites were not dictated by Crush City, but instead resulted from what was best and most efficient for the specific Class member. Some employees drove their personal vehicles to and from job sites, while others were picked up at various locations which were convenient for the employee:

| Q: | How did it work when you would be released from the jail during those periods? |
|---|---|
| A: | I would be picked up at - - at first I was picked up by my partners at the jail. |
| Q: | Okay. |
| A: | And then we would go to work and they would drop me back off, but that was only for a certain time. |

| Q: | If we're looking at the period from when you get the company van around August of 2017 to that June 1st of 2018 period, would you drive to the shop each day? |
|---|---|
| A: | It varied. |
| Q: | So sometimes you drive to the shop, correct? |
| A: | Or sometimes I would pick people up at a park and ride or a house, their house. |

Morgan Depo., 21:11–20, 104:7–15.

| Q: | Did you ever drive directly to a job site? |
|---|---|
| A: | I did on a couple of occasions, yes. |
| Q: | And why did you do that? |

10

| A: | One time I was golfing league on a Tuesday night and T.J. didn't plan on obviously leaving before I had to. That was the only time of my golf league. Other times we did have job sites that were close to my house than the shop so I would opt out of driving to the shop to ride with T.J. and just drive straight to the job site myself, saving myself on gas. |

Deposition of Reed Chelberg, ECF No. 63 ("Chelberg Depo."), 25:21-26:7.

| Q: | And had you been on the company's insurance and been able to take the vehicle home, would you have been able to just leave from your home and go straight to the job site? |
| A: | In the company vehicle or my car? |
| Q: | In the company vehicle. |
| A: | Yeah. |

Pressley Depo., 15:4–10.

| Q: | Okay. And the individuals who don't drive the truck, how - - how do they get to the job sites? |
| A: | Again, they can either meet up and ride with whoever is driving the company vehicle or they can drive their own vehicle to the job site. |

Deposition of Jill Larson, ECF No. 31 ("Larson Depo."), 79:1–5.  Further testimony from

these putative Class members indicates that many of the Class members who did meet at

Crush City's shop to pre- or post-travel were paid for some or most of their travel time:

| Q: | So when you were driving a vehicle, you would agree that you got paid for drive time. Correct? |
| A: | On the way to the job site, yes. |

| A: | Jim allowed us to get drive time [on the way back from the job site] if we drove or if we came - - if we were riding, we came back from a job and worked in the shop for 15 to 30 minutes, we were allowed to take drive time. |

| A: | We were always given - - If you showed up to the shop and talked with somebody and met with your lead, you were given drive time on the way to the job site. |

11

Deposition of Caleb Davis, ECF No. 70 ("Davis Depo."), 24:9–13, 25:2–6, 41:20–24.

| A: | Basically we tried to utilize, as best we could, tasks at the shop. If we needed wraps for the job site we would stay and bend them up to allow ourselves to record drive time or emptying garbages from the job site after we got back, those type of things. |
|---|---|
| Q: | Because you wanted to do activity at the start or end of the day that would make your drive time eligible for pay under the drive time policy. Correct? |
| A: | Correct. |

Chelberg Depo., 23:13–25.

| Q: | So after that meeting did you ever claim drive time? |
|---|---|
| A: | That would be when I was on the tear-off crew and I started driving. |
| Q: | So you would agree that when you were on the tear-off crew and you were driving, you got paid for that drive time? |
| A: | I tried submitting drive time. It was either at the point that I did submit it or a little big after I was told I could not claim drive time unless I was hauling materials to the job site or back, whereas at the point in time everybody else who was driving, they claimed it either way as long as we were heading back to the shop, which every day we did when I was bringing Randy back to the shop. |

Deposition of Hunter Smith, ECF No. 26 ("Smith Depo."), 53:8–24.  What's more, even some Class members were unaware of what the alleged policies even were:

| Q: | Do you have any written policy that was ever provided to you about drive time? |
|---|---|
| A: | I believe there was, but the policy changed so much that I couldn't keep up with it.  I honestly can't remember. |

Smith Depo., 61:3–7.

Courts, such as the Eastern District of Wisconsin in *Miller v. ThedaCare Inc*., No. 15-C-506, 2018 WL 472818 (E.D. Wis. Jan. 18, 2018), have found a common policy did not exist (and denied class certification in turn), where the facts indicated that whether or

not an employee was paid was due to a "myriad of factors each employee faced," including "the department in which the employee worked, the supervisor to whom they reported, and each employee's own subjective attitude and intent."  *Miller v. ThedaCare Inc*., No. 15-C-506, 2018 WL 472818 (E.D. Wis. Jan. 18, 2018).  Here, testimony (summarized *infra* at n.12) indicates that Plaintiff and other putative class members, like the plaintiffs in *Thedacare*, cannot agree on (or even identify) a cohesive policy that was applied across-the-board by the various managers of Crush City's divisions (*see infra* n. 12).  Plaintiff's Motion for Certification should likewise be denied.

2. <u>Plaintiff's Alleged "Common Question" is Incapable of Producing a "Common Answer" to Resolve Travel Time Claims on a Classwide Basis</u>

Importantly, the adjudication of the claims of the proposed Class Representative, here Plaintiff, would not provide any answers helpful for adjudicating the claims of the remaining class.  This is because under the WWPCL and Wisconsin's Administrative Code, compensability of work as well as compensability of travel time depends on the type and nature of work performed by Crush City's employees.  Specifically, the WWPCL provides that every employer must, at least monthly, pay its employees "all wages earned by the employee."  Wis. Stat. § 109.03, subd. 1.  Wisconsin's Administrative Code in turn directs that all employees "must be paid for all time spent in 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer's business.'"  Wis. Admin. Code § DWD 272.12(1)(a)(1).  The Administrative Code also lists specific scenarios for which work-related travel is compensable.  These scenarios are, exhaustively: (1) when travel

13

occurs during emergency work situations; (2) when travel occurs on a one-day assignment to another city; (3) when travel away from an employee's home community occurs (but is not compensable where the employee foregoes public transportation and chooses to use private automobile); and (4) and when an employee "is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and carry tools." *See* Wis. Admin. Code § DWD 272.12(g)(2–7).[2] Outside of these limited circumstances, travel time is compensable only where a plaintiff-employee can prove that the employee performed a "principal activity" prior to traveling.  Wis. Admin. Code § DWD 272.12(1)(a)(2).  "Principal activity" is circularly defined as "all activities which are an integral part of a principal activity." Wis. Admin. Code § DWD 272.12(1)(e)(1).  Notably, ***no court*** applying the WWPCL or Wisconsin's Administrative Code has found that commuting time, without the performance of a principal activity which precedes or follows it, is compensable on its own.  *See Kieninger v. Crown Equip. Corp*., 924 N.W.2d 172, 178–79 (Wis. 2019) ("[Plaintiff's argument] would mean that conveying himself from home to the customer's location is integral or indispensable to the principal activity . . . But according to our statutes and regulations, that simply is not the rule.").

Under Wisconsin's statutory and administrative law, factual differences—such as what tasks were completed when—can mean the difference between whether travel time is compensable or not under the WWPCL.  Here, class members' work duties varied widely

---

[2] Crush City recognizes that while a court deciding a motion for certification under Fed. R. Civ. P. 23 should not decide the merits of a case before certifying, where the Rule 23 requirements overlap the merits of the case "the judge must make a preliminary inquiry into the merits." *Szabo v. Bridgeport Machines, Inc*., 249 F.3d 672, 676 (7th Cir. 2001).

among Class members based on the member's department,[3] the specific job, and even the day.  As such, this Court would be required to make a person-by-person, day-by-day inquiry as to what type was performed by which class member on each day putative Class members allege they were incorrectly paid to resolve the claims of the Travel Time Class.

Plaintiff acknowledges that individualized factual inquiries are necessary to resolve the claims of the Travel Time Class but drastically plays down the type and extent of individualized inquires which are necessary, stating: "Plaintiff anticipates that minor, individualized variances will exist between class members of the Travel Time Class with respect to the number of occasions upon which they recorded and were compensated for travel time, but such variances are matters of damages, not questions of underlying liability."  Pl.'s Brf. at 37.  However, looking to the substance of the WWPCL and Wisconsin's Administrative Code, as well as relevant case law, it is apparent that Plaintiff's argument evidences only wishful thinking—courts in this District have found that individual inquiries are necessary to determine both liability and damages under the WWPCL and have routinely denied class certification on that basis.  *See Boelk v. AT&T Teleholdings*, Inc., No. 12-cv-40-bbc, 2013 WL 261 261265 (W.D. Wis. Jan. 10, 2013)*; Drake v. Aerotek, Inc*., No. 14-cv-216-bbc, 2015 WL 6554592 (W.D. Wis. Oct. 29, 2015).

---

[3] *See* Morgan Depo., 78:4 (testifying that he worked in the siding department as tear-off crew); Chelberg Depo., 19:14–18 (testifying he always worked in the siding department); Davis Depo., 19:6–16 (testifying that he worked for the LeafGuard and decking departments); Miller Depo., 51:13–25 (testifying that he only worked in the construction department); Pressley Depo., 15:21 (testifying he worked in the siding department as tear-off crew); Smith Depo., 18:11-16 (testifying that he worked on the decking department and later the siding department as tear-off crew).

One opinion out of the Western District of Wisconsin, *Boelk v. AT&T Teleholdings, Inc.*, No. 12-cv-40-bbc, 2013 WL 261 261265 (W.D. Wis. Jan. 10, 2013), is particularly instructive.  In *Boelk* six plaintiffs brought a putative class and collective action against their former employer, AT&T, arguing that AT&T owed plaintiffs and putative collective and class members regular and overtime wages under the FLSA and the WWPCL for unpaid meal breaks, arguing employee's activities while on break were restricted and thus compensable. *Id.* at *1.  Noting that plaintiffs "have cited nothing in Wisconsin or federal law supporting the proposition that employers must pay employees for meal breaks simply because the employee is restricted in what he can do during the break," Judge Crabb looked to Wisconsin law and determined that the question of whether a class member was owed wages for meal breaks turned on the individual circumstances surrounding each meal break as well as class members' specific activities during such breaks. *Id.* at *8–10.  In ultimately denying plaintiff's motion for collective and class certification, Judge Crabb found that commonality did not exist among the class, concluding, "[the] differences between the technicians' experiences and supervisor discretion make it impossible to generate common answers on a classwide basis."  *Id.* at *10.  Judge Crabb further noted that plaintiffs had failed to satisfy the predominance requirement of Rule 23, explaining:

> For the same reasons described above in discussing commonality, plaintiffs cannot show that common questions of law and fact predominate. ***Determining whether a given employee suffered a meal break violation will depend largely on numerous highly fact-specific inquiries*** as to the reason why a technician worked during all or part of his meal break on a particular day . . . it would be exceedingly difficult to determine in one proceeding . . . Under the circumstances, the case would be unmanageable as a class action.

*Id.* at *13 (emphasis added).

16

Like the plaintiffs in *Boelk*, Plaintiff here presents no case law or code which supports his argument that travel or commuting time is, in and of itself, compensable work time under the WWPCL or Wisconsin's Administrative Code. To the contrary, Wisconsin's Administrative Code provides directs that travel or commuting time is ***not*** automatically compensable by providing specific, enumerated examples of when travel time is compensable. *See* Wis. Admin. Code § DWD 272.12(g). Nor can Plaintiff offer to the Court any question which can be answered on a classwide basis for the Travel Time Class because the question of whether Plaintiff and Class members are owed wages depends on facts which are specific to each class member. Plaintiff cannot overcome the fact that liability for the Travel Time Class claims depends on fact-specific, individual inquiries; thus, this Court must similarly deny Plaintiff's Motion for Certification.

It is because of the necessity of individualized liability inquiries for resolution of the Travel Time Class claims that Plaintiff's reliance on *Bitner v. Wyndham Vacation Resorts, Inc.,* No. 13-cv-451-wmc, 2016 WL 7480428, at *11 (W.D. Wis. Dec. 29, 2016) is misplaced. While this Court in *Bitner* granted certification of a class of sales representatives—despite finding that damages determinations required individual inquiries—the Court expressly noted that its grant of class certification depended in part upon the consistency of testimony which indicated that managers at Wyndham enforced a common policy which violated federal law ***on its face***, thus making the issue of liability possible on a class-wide basis. *See id.* at *8–9.

Ultimately, Plaintiff has failed to identify a common question capable of generating an answer that would "drive the resolution of the litigation." In light of the substantive

requirements of the WWPCL and Wisconsin's Administrative Code, as well as the wide-ranging and types of work performed by Class members for which liability may depend, resolution of the Travel Time Class claims cannot be decided from one—or even a small number—of inquiries.  Common issues of law and fact do not exist in such a way that Plaintiff's travel time claims are capable of determination on a classwide basis.  For this reason, and for the reasons below, Plaintiff's Motion for Certification must be denied.

### B.   Plaintiff Zachary Morgan's Claims are Not Typical of the Classes He Seeks to Represent.

Rule 23 further requires a plaintiff to demonstrate that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  It is well-settled that a class representative "must be part of the class and 'possess the same interest and suffer the same injury' as the class members [he seeks to represent]."  *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (citing *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)).  A class representative's claims must have "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group."  *Spano v. Boeing Co*., 633 F.3d 574, 586 (7th Cir. 2011).  Even the presence of a defense particular to the class representative may preclude a finding of typicality.  *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011).

Testimony indicates that Plaintiff, as a regular driver of Crush City's company-owned vehicles, may have been compensated in circumstances that non-driver Class

members were not; thus Plaintiff does not have standing to pursue many of the claims that may be alleged by passenger Travel Time Class Members.  For example, as acknowledged by Plaintiff in his Brief: "At the start of the workday on October 2, 2017, Plaintiff and Technician Employee Hunter Smith, a member of Plaintiff's crew, were both at Defendant's shop from 6:30 a.m. to 8:00 a.m. Between 8:00 a.m. and 8:45 a.m., ***only Plaintiff recorded travel time. Smith did not***."  Pl.'s Brf. at 14 (emphasis added).  Other putative Travel Time Class members testified that drivers were compensated differently from passengers.  *See* Miller Depo., 47:8–10 ("Q Did he ever tell you that only the driver gets paid drive time? A Yes."); Smith Depo., 52:23–24 ("It was just brought up that drivers could only claim the drive time, or something along those lines.").  This is confirmed in part by Crush City's written "Drive Time Policy" guidelines, which direct that drive time is automatically compensable for drivers at times when it is not automatically compensable for passengers.  *See* Kappenman Decl. ¶ 2, Ex. A.  Situations in which a driver would automatically receive compensation under the guidelines include times when a driver pulls a trailer to a jobsite, drives from the shop to the jobsite after receiving instructions, picks up material, or loads the company vehicle.  *See* Kappenman Decl. ¶ 2, Ex. A.  Thus, Plaintiff's status as a driver of company vehicles, and not merely a passenger, arguably situates him differently from the many passenger Travel Time Class members and might result in less-than-zealous advocacy on behalf of the passenger Class members.

### C.      *Plaintiff Zachary Morgan is an Inadequate Class Representative.*

Rule 23's adequacy requirement "ensures that 'representative parties will fairly and adequately protect the interests of the class.'"  *Bitner v. Wyndham Vacation Resorts, Inc*.,

19

2016 WL 7480428, at *9 (W.D. Wis. Dec. 29, 2016) (citing Fed. R. Civ. P. 23(a)(4)).

Courts look to the "personal characteristics" of the proposed class representative, as well

as the proposed representative's ability to aid the Court by providing their knowledge of

the facts of the case, to determine whether the representative is sufficiently adequate. *See*

*In re Goldchip Funding Co.,* 61 F.R.D. 592 (MD. Pa. 1974). "Personal characteristics"

include the perceived "credibility and integrity" of the proposed class representative, which

has "a direct bearing on [the representative's] ability to adequately represent members of

the class." *Davidson v. Citizens Gas & Coke Utility*, 238 F.R.D. 225, 229 (S.D. Ind. 2006).

"[R]epresentatives must be of such character as to assure the vigorous prosecution or

defense of the action so that the members' rights are certain to be protected . . . facts

regarding the personal qualities of the representatives themselves are relevant, indeed

necessary, in [reaching an adequacy determination]." *In re Goldchip,* 61 F.R.D. at 594.

Testimony from Plaintiff himself demonstrates why Plaintiff fails to satisfy the

adequacy requirement of Fed. R. Civ. P. 23. First, as highlighted to the Court in Crush

City's Opposition to Plaintiff's Motion for Conditional Certification, Plaintiff's criminal

record is extensive and includes convictions for felony witness intimidation, felony theft,

felony burglary. Many of these charges and convictions were confirmed by Morgan in his

deposition:

| Q: | So we talked about the burglary conviction when you were 17 to 21. Have you been convicted of any other crimes? |
|----|----|
| A: | Yes, I have. |
| Q: | What are those crimes? |
| A: | I can't tell you them all. From the age of roughly 17 to the year 2015-2016 I have been convicted of several crimes. The crimes were drug possession, burglary, theft, intimidating a witness, a |

20

|  | couple of traffic tickets.  I think that's it.  I would have to look on CCAP to answer more. |
|--|--|

Morgan Depo., 16:3–16.  In fact, Plaintiff is still serving probation for a 2018 theft and

burglary which, if violated, would cause him to return to prison for seven years:

| Q: | How about the theft conviction? That's different than the burglary where you were in the vehicle, correct? This is a different - - |
|--|--|
| A: | Yes, different. |
| Q: | Okay. |
| A: | Convicted - - so found guilty, convicted, right? |
| Q: | Correct. |
| A: | 2018. |
| Q: | And the events - - |
| A: | That's actually a theft and burglary together, I believe. |
| Q: | Thank you. And that's 2018. The act that resulted in the conviction, when did that happen? |
| A: | I can't remember. I was under the influence. |
| Q: | What were you under the influence of? |
| A: | Methamphetamine. |

| Q: | The burglary and the theft conviction in 2018, how long of a sentence did you receive? |
|--|--|
| A: | I got eight years total. Seven years is withheld. If I violate my probation, I go to prison for those seven years. |

Morgan Depo., 16:21-17:15, 18:10–13.  Courts have found such "personal characteristics"

to be lacking, and thus denied class certification for lack of adequacy, where the proposed

class representative possessed a criminal history—typically one less extensive than

Plaintiff—which was capable of undermining their credibility.  *See, e.g.*, *Sloane v. Gulf*

*Interstate Field Servs., Inc.*, No. 4:16-cv-01571, 2017 WL 1105236 (M.D. Pa. Mar. 24,

2017) (finding class representative inadequate where representative had been convicted of

multiple burglary and theft charges and noting plaintiff's past alcohol abuse); *Weisman v.*

*Darneille*, 78 F.R.D. 669, 671 (S.D.N.Y. 1978) (conviction at issue in rejection as class

21

representative resulted in in no incarceration and mere \$5,000 fine); *Kirkpatrick v. Ironwood Commc'ns, Inc*., No. C05-1428JLR, 2006 WL 2381797 (W.D. Wash. Aug. 16, 2006) (finding proposed representative to be inadequate where proposed representative had seven felony convictions and theft and fraud convictions); *Davidson v. Citizens Gas & Coke Utility*, 238 F.R.D. 225, 229 (S.D. Ind. 2006) (finding two proposed class representatives inadequate due to past felony burglary and theft convictions); *Maddox & Starbuck Ltd. v. British Airways*, 97 F.R.D. 395, 396–97 (S.D.N.Y. 1983) (finding proposed class representative to be inadequate due to criminal conviction unrelated to facts of case).

In addition to potential credibility and integrity concerns, Plaintiff's deposition testimony indicates that he cannot aid the Court or a factfinder in its determination of the merits of the case because Plaintiff cannot remember many of the essential facts at issue:

| Q: | When would you start your time for the day? What would you enter on your time sheet as the start of your workday? |
|----|----|
| A: | I can't remember. You would have to look at the records. |
| Q: | And I am not looking for the time. I am looking for would you start it when you were at the shop or would you start it when you were at the job site? |
| A: | I can't remember. |

Morgan Depo., 90:9–24.

| Q: | I am trying to understand did you start your workday [by starting to log time] when you left the shop? Did you start the workday when you got to the shop? Did you start the workday when you got to the jobsite? . . . |
|----|----|

| A: | I can't remember |
|----|----|

Morgan Depo., 91:1–20.

22

| Q: | Do you remember when you entered as the end of your workday? Was it when you were leaving the job site or when you were leaving the shop to get into your own personal car? |
|----|-----------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| A: | I don't remember for that time period. |

Morgan Depo., 92:20–25.

| Q: | So when would you have to pick up materials from the shop? |
|----|-------------------------------------------------------------|
| A: | When I was told to. |
| Q: | But what circumstances would require it? |
| A: | A new job. |
| Q: | And how often was that? |
| A: | I can't remember. |
| Q: | And how often would you have to dispose of materials back at the shop? |
| A: | I can't remember. |

Morgan Depo., 100:21-101:6.

| Q: | Did the drive policy change, the getting paid for drive time change at all during your employment at Lindus or was it always the same? |
|----|----------------------------------------------------------------------------------------------------------------------------------------|
| A: | I can't remember. |

Morgan Depo., 102:11–15.

| Q: | How often did you from August of 2017 to June 1st of 2018, did you drive directly to job sites? |
|----|-------------------------------------------------------------------------------------------------|
| A: | I can't remember. |
| Q: | For that you think the records, the GPS records, would be the best thing to look at? |
| A: | Absolutely. |
| Q: | How would we determine who was in the vehicle with you? |
| A: | How would you determine? That's not my job. |

Morgan Depo., 112:24-113:10.  Importantly, Plaintiff testified that at least some of his inability to recall certain facts is due to Plaintiff's past use of methamphetamine, a drug which he used while working for Crush City:

| Q: | Thank you.  And that's 2018.  The act that resulted in the conviction, when did that happen? |
|----|----------------------------------------------------------------------------------------------|

23

| A: | I can't remember.  I was under the influence. |
|----|---|
| Q: | What were you under the influence of? |
| A: | Methamphetamine. |
| Q: | Do you recall the time period when you were using methamphetamines? |
| A: | Not very well, no. |

| A: | I actually worked a day or two at Lindus, I don't remember the date, but it was when I was under the influence. |
|----|---|

Morgan Depo., 17:9–19; 72:18–20.

### D.     *Morgan's Summary Judgment Motion Disqualifies Him as a Class Representative.*

Courts have found that a proposed class representative's individual motion for summary judgment may raise adequacy concerns on the grounds that a plaintiff's summary judgment motion could "raise[] the specter that the class would have to be decertified pursuant to the rule of one-way intervention." *Stampley v. Altom Transport, Inc.*, 958 F.3d 580, 585 (7th Cir. 2020).  For example, in *Altom Transport, Inc.*, the plaintiff, a commercial driver, filed a putative class action alleging defendant failed to compensate him and putative class members in accordance with the parties' agreements, and was granted certification of his proposed class.  *Id.* at 582.  However, soon after receiving certification, and before notice was issued, plaintiff moved for summary judgment on an issue relevant to plaintiff only.  *Id.* at 585.  In affirming the lower court's decertification of the Rule 23 class, the Seventh Circuit agreed with the lower court that Stampley could no longer be considered an adequate class representative in light of his motion for summary judgment, noting that the plaintiff was "clearly focused on protecting his own claim against a

contractual defense, rather than representing the class as constituted." *Id.* at 585–86.  The same can be said of Plaintiff's Motion for Summary Judgment here.

Clearly, Plaintiff's criminal history, his past drug use while employed by Crush City, his inability to recall many critical facts, and his self-interested poorly-timed Motion for Partial Summary Judgment, all demonstrate that Plaintiff does not possess the personal characteristics, credibility, integrity, or ability to provide essential testimony necessary for Plaintiff to fairly and adequately represent the Classes.  On these grounds, in addition to the other reasons mentioned herein, Crush City respectfully asks the Court to deny Plaintiff's Motion for Certification.

### E.   *Plaintiff's Counsel Has Not Demonstrated the Requisite Experience with Rule 23 Class Actions, nor has Counsel Demonstrated That They Will Fairly and Adequately Represent the Classes.*

In addition to the proposed Class representative, "class counsel must be qualified, experienced, and able to conduct the proposed litigation."  *Boyd v. Meriter Health Serv. Empl. Retirement Plan*, No. 10-cv-426-wmc, 2012 WL 12995302, at *7 (W.D. Wis. 2012). Fed. R. Civ. P. 23(g) provides that a court must consider, when appointing class counsel:

> (1) the work counsel has done in identifying or investigating potential claims in the action;
> (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (3) counsel's knowledge of the applicable law; and
> (4) the resources that counsel will commit to representing the class; [and]
> (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class . . .

Fed. R. Civ. P. 23(g).  Where proposed class counsel has "demonstrated a lack of integrity that casts serious doubt on their trustworthiness as representatives of the class," or where

the court has "no basis for confidence that [class counsel] would prosecute the case in the interest of the class, of which they are the fiduciaries . . . rather than just in their interest as lawyers who if successful will obtain a share of any judgment or settlement as compensation for their efforts," the court may deny class certification. *Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913, 918 (7th Cir. 2011). "Misconduct by class counsel that creates a serious doubt that counsel will represent the class loyally ***requires*** denial of class certification." *Id.* (emphasis added).

Contrary to Plaintiff's assertion, the record thus far does not support a finding that Plaintiff's counsel has diligently represented class members in this case. For example, on July 14, 2019, Plaintiff's counsel sought, and later obtained, conditional certification of two (2) FLSA classes. [ECF Nos. 19–32, 40]. After realizing less-than-desirable opt-in numbers, Plaintiff's counsel: (1) first denied he represented the opt-in plaintiffs, despite being appointed as counsel for the FLSA collective class [ECF No. 60, Ex. B at 2]; (2) then denied the opt-in plaintiffs had interests or rights in the litigation on par with party plaintiffs, which they do [ECF No. 60, Ex. B at 8]; (3) then chose not to represent certain opt-in plaintiffs during their depositions [ECF No. 60, Ex. E];[4] and finally (4) appears to have abandoned six opt-in plaintiffs, whose consent to sue forms he filed, without withdrawing as counsel [ECF No. 61 at 3]. Furthermore, Plaintiff's counsel did not diligently move to amend Plaintiff's operative complaint, choosing to move for leave to amend after the discovery deadline had passed and despite knowing the collective action

---

[4] *See also* Davis Depo., 5:18–20 ("[Q] I understand that you don't have an attorney for this matter? A Not me specifically.").

was incapable of certification over six months prior.  [ECF Nos. 56, 59 at 7].  Now, at the Rule 23 certification stage, Plaintiff's counsel has chosen to dedicate approximately 28 pages of briefing to argue for summary judgment on behalf of Plaintiff alone, and a fraction of that—approximately 10 pages—presenting a weak and unsupported argument in what appears to be a slapdash attempt at certifying two Rule 23 Classes.  *See* Pl.'s Brf. at 67.

What's more, Plaintiff, despite having the burden of proof as to each certification element, presents no evidence in support of its argument that Plaintiff's counsel satisfies the adequacy requirement of Fed. R. Civ. P. 23 or can commit the resources necessary to pursuing this litigation, stating only: "Here, Plaintiff's Counsel, Walcheske & Luzi, LLC, specifically James A. Walcheske, Scott S. Luzi, and David M. Potteiger, are experienced attorneys who have handled hundreds of wage and hour matters pursuant to the FLSA and WWWPCL [sic], including collective and class action cases."  Pl.'s Brf. at 35.  Plaintiff's counsel presents no examples of cases in which Plaintiff's counsel has been certified as class counsel by a court, nor does Plaintiff's counsel present examples of class awards obtained for classes represented by Plaintiff's counsel.  Nor does Plaintiff attest to the resources Plaintiff's counsel's firm is able to commit to the instant litigation.  While Plaintiff's counsel does state in his Declaration that over the past three years he has filed approximately 156 FLSA cases into the Eastern and Western Districts of Wisconsin (an average rate of filing one per week), Plaintiff's counsel provides no explanation of how he will effectively oversee this complex litigation in addition to the hundreds of other active

cases he is currently litigating, especially in light of the fact that Plaintiff's counsel's firm appears to employ just five (5) attorneys.[5]

Finally, federal courts have noted that "[w]hen an attack on the class representatives is made, the court may weigh . . . not only the adequacy of class representatives but, if they are inadequate even under loose standards, whether the action of potential class counsel in selecting them creates some doubt about counsel's ability to serve as lead counsel in th[e] suit." *Williams v. Balcor Pension Investors*, 150 F.R.D. 109, 118–19 (N.D. Ill. 1993).  As discussed above, Plaintiff has been convicted of multiple felonies, including at least one for witness intimidation, testified to being under the influence of methamphetamines while performing work for Crush City, and he cannot remember material facts relevant to proving his case.  None of these facts were incapable of being discovered before the instant suit was filed.  Plaintiff's counsel's choice in choosing Zachary Morgan should be taken into account when evaluating whether Plaintiff's counsel has the diligence, attention to detail, and judgment necessary to adequately represent the proposed Rule 23 Classes.

Unfortunately, given the record before the Court, Crush City argues that there is a serious doubt that Plaintiff's counsel will represent the Classes adequately.  As such, certification of the Classes must be denied.

## II.    PLAINTIFF FAILS TO SATISFY BOTH PRONGS OF FED. R. CIV. P. 23(B)(3).

### A.    *No Common Questions of Law or Fact Predominate Over the Class Claims.*

---

[5] *See Meet our Attorneys*, Walcheske & Luzi, https://www.walcheskeluzi.com/our-attorneys/ (last visited Sept. 24, 2020).

In addition to the requirements set forth in Fed. R. Civ. P. 23(a), Plaintiff must prove the proposed Classes meet the predominance and superiority requirements of Fed. R. Civ. P. 23(b)(3).  Four items are relevant to a determination of predominance and superiority:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesireability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  As part of the four considerations of Fed. R. Civ. P. 23(b)(3), a plaintiff seeking to certify a class through Fed. R. Civ. P. 23(b) must show that "questions of law or fact common to class members predominate over any questions affecting only individual members[.]"  Fed. R. Civ. P. 23(b)(3).  "Rule 23(b)(3)'s predominance requirement is satisfied when 'common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication.'" *Messner v. Northshore University HealthSystem*, 669 F.3d 802, 814 (7th Cir. 2012) (citing 7AA Wright & Miller Federal Practice & Procedure § 1778 (3d ed. 2011)).  Common questions are those where "the same evidence will suffice for each member to make a prima facie showing[.]"  *Id.* at 815.  Conversely, individual issues are those which require the various members of a class "to present evidence that varies from member to member[.]"  *Id.*

Courts have found that the "[m]ere assertion by class counsel that common issues predominate is not enough."  *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014).  Plaintiff, however, does just this in his Brief, stating only that "common questions

predominate whatever individualized inquiries may exist," and identifying two "common questions" relevant to the Classes:

> [W]hether: (1) Defendant maintained a Travel Time Policy that, as written and effectuated in practice, resulted in its failure to compensate its Technician Employees for all compensable travel time; and (2) Defendant's policy in practice was to not include all forms of non-discretionary compensation paid to its Technician Employees in their regular rates of pay for overtime calculation and compensation purposes, resulting in its failure to compensate such employees with all overtime owed.

Pl.'s Brf. at 36–37.  Given the individualized factual issues which exist for the Travel Time Class claims, Plaintiff's predominance argument is merely illusory.

First, while courts typically need not examine the merits of a case at the class certification stage, where the requirements of Rule 23 become intertwined with the merits of a case "the judge must make a preliminary inquiry into the merits." *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).  Here, Plaintiff has alleged Crush City violated Wisconsin's Wage Payment and Collection Law by not compensating Plaintiff and Class members pursuant to Wis. Stat. § 109.03.  As explained in above in Part I.A.2, whether travel time in this case is compensable is a fact-specific determination requiring individual inquiries.  Because liability under the WWPCL is so fact-dependent, whether or not a Class member: (1) drove his personal vehicle or a company vehicle to jobsites; (2) picked up or transported passengers; (3) commuted directly from home to the jobsite or vice versa; (4) attended meetings pre- or post-travel; (5) loaded or unloaded vehicles pre- and post-travel; (6) performed preliminary activities pre- or post-travel; and (7) was or was not already paid for the drive time, all factor into a determination of whether a Class member's is owed wages.  *See* Wis. Stat. § 109.03; Wis. Admin. Code § DWD 272.12.

Thus, the factual permutations with respect to the travel arrangements for each Travel Time Class member are nearly endless. The deposition testimony given by Plaintiff, as well as putative Travel Time Class members Reed Chelberg, Caleb Davis, Ryan Miller, Hunter Smith, and Randy Pressley, illustrates just how varied the facts relevant to a liability determination are in this case with respect to each class member. For example, some putative Travel Time Class members testified that they were regular drivers of vehicles, while others never drove.[6] Some exclusively commuted in Crush City's vehicles to Crush City's jobsites, while others occasionally drove their own vehicles.[7] Some Class members were picked up from home, some were picked up from jail, and still others were picked up various rideshare locations or Crush City's shop.[8] Some were responsible for attending weekly or monthly meetings[9] and/or loading and unloading vehicles pre- and post- travel, others were not.[10] Some were routinely compensated for drive time to and from job sites,

---

[6] *See* Morgan Depo., 27:22 (testifying that he was usually the driver); Chelberg Depo., 23:3–6 (testifying that he was both a driver and passenger); Davis Depo., 24:4–8 (testifying that he usually drove company vehicle alone); Miller Depo., 28:10–20 (testifying that he was usually the driver); Pressley Depo., 13:8–17 (testifying that he drove company vehicle alone every day).

[7] *See* Morgan Depo., 21:11–20, 104:7–15; Chelberg Depo., 25:21-26:7.

[8] *See* Morgan Depo., 21:11–20, 104:7–15; Chelberg Depo., 25:21-26:7.

[9] *See* Morgan Depo., 33:4-34:12, 116:8-12 (testifying that he attended meetings the second Wednesday of every month from June to August 2018, and later testifying that he attended a "regular Monday meeting"); Chelberg Depo., 13:11–12, 20:5–7 (testifying that he attended a weekly department meeting on Mondays); Miller Depo., 22:9–11 (testifying that he attended a weekly Monday meeting); Pressley Depo., 24:15–25 (testifying to attending daily meetings); Smith Depo., 52:7–25 (testifying to attending a monthly meeting).

[10] *See* Morgan Depo., 89:1–14, 101:3–5 (testifying that occasionally he had to load company vehicle before traveling to job site and dispose of materials after job site); Chelberg Depo., 23:7–23 (testifying that he performed tasks at the shop at the end of the day to receive compensation for drive time); Davis Depo., 30:3–25 (testifying that he didn't have to unload while working for LeafGuard crew, but had to load and unload while

others claim to have never been paid for travel.[11]  And most had different managers who communicated different guidelines to the Class members about the compensability of drive time.[12]  While some of these factual differences can be attributed to the various departments Plaintiff and Class members were assigned to (such as LeafGuard, siding, windows and doors, roofing, construction, insulation, and decking)[13], many differences depend on the

---

working for decking crew); Miller Depo., 35:3–14 (testifying that he regularly unloaded vehicle but rarely loaded vehicle); Pressley Depo., 27:16–22 (testifying that he didn't have to load or unload vehicle often, and when he did, "[i]t was just like my personal stuff[.]"); Smith Depo., 22:11-23:12, 94:22-95:12 (testifying that he did not regularly have to load vehicle but did regularly unload).

[11] *See* Davis Depo., 24:9–13, 25:2–6; Chelberg Depo., 23:13–25; Smith Depo., 53:8–24; Kappenman Decl. at ¶ 4, Ex. C at 5.

[12] *See* Morgan Depo., 38:10–16, 51:9-53:18, 59:6–15 (testifying that his manager, Ben Miller, arranged the rideshare whereby Morgan picked up and Reid Filiatreaux because "Reid didn't have a license," and occasionally rejected Morgan's timecards for claiming drive time when he shouldn't); Chelberg Depo., 33:10–13, 34:24-35:1 (testifying that Ben Miller and a man named "Ryan" were his managers, but Chelberg didn't have any conversations with his managers about drive time); Davis Depo., 21:10–11,  34:7–8, 39:3-40:4 (testifying that Davis's managers were Danny Kehren and Jim Olson, and testifying that Davis discussed a drive time policy with Kehren but cannot remember what was said); Miller Depo., 21:15-22:22, 26:5–9 (testifying that Brian Blok was his manager and Blok informed him that only team leads could qualify for drive time "in the morning during the week," and Miller would only qualify for drive time in the mornings on days where he attended meetings and worked in the shop before traveling); Pressley Depo., 31:17–23 (testifying that Ben Miller informed Pressley that he could record drive time when he hauled materials back to the shop); Smith Depo., 19:18–22 (testifying that he could not remember his supervisor's name).

[13] *See* Deposition of Adam Lindus, ECF No. 71 ("Lindus Depo., 48:7–9; Morgan Depo., 78:4 (testifying that he worked in the siding department as tear-off crew); Chelberg Depo., 19:14–18 (testifying he always worked in the siding department); Davis Depo., 19:6–16 (testifying that he worked for the LeafGuard and decking departments); Miller Depo., 51:13–25 (testifying that he only worked in the construction department); Pressley Depo., 15:21 (testifying he worked in the siding department as tear-off crew); Smith Depo., 18:11-16 (testifying that he worked on the decking department and later the siding department as tear-off crew).

personal preferences of the Class members.[14]  Importantly, none of these facts, or Crush City's liablity, can be determined without testimony.  While Plaintiff may imply that GPS location data from Crush City's vehicles will aid in the determination of liability on a classwide basis, Crush City's GPS records ***do not show who drove or rode in each vehicle,*** or whether Class members attended meetings or otherwise performed compensable pre- or post-travel work.  *See* Lindus Depo., 97:5–10 ("And is there a record of who is assigned a particular work vehicle? A No."); Kappenman Decl. ¶ 3, Ex. B (providing an example of a GPS report).  Even where a Crush City employee is indicated as being associated with a vehicle (*see* Kappenman Decl. ¶ 3, Ex. B), Plaintiff and Class members frequently took turns driving and employees belonging to larger crews would split themselves among multiple vehicles.[15]  Thus, an inquiry into whether or not Crush City's policies (to the extent they can be identified) violate the WWPCL is simply ***not possible*** on a classwide basis.

What's more, should the case proceed beyond the liability stage, individual damage calculations would further overwhelm this litigation.  This is because Plaintiff can present no testimony or other evidence from which the Court or a factfinder can make efficient determinations as to damages.  While Plaintiff may argue that GPS data from Crush City's

---

[14] *See* Morgan Depo., 21:11–20, 104:7–15; Chelberg Depo., 25:21-26:7.

[15] *See* Morgan Depo., 26:25-28:2 (testifying that Zach and Mitchell would drive the van assigned to Morgan to pick him up from jail, and Morgan "would usually get in the driver's seat and drive," but the crew members "would alternate"); Davis Depo., 26:4–10 (testifying that most employees "switch off" driving); Miller Depo., 42:22–25 (testifying that he switched off driving with coworker); Smith Depo., 40:3-42:21 (testifying that the tear-off crew Smith worked for often took two vans to jobsites, and Smith often switched off driving with other crew members).

company-owned vehicles can provide insight into where Class members traveled and when, Crush City's GPS records do not indicate who was driving or traveling in each vehicle and when GPS records also do not indicate whether or not Plaintiff or Class members attended meetings, loaded tools or materials, or otherwise performed compensable work pre- and/or post travel entitling them to compensation for travel time. *See* Morgan Depo., 99:23-100:1 ("A. And you would agree that there wouldn't be a record of who is sitting behind the steering wheel, correct? A. I don't think so. Q. You didn't make one? A. No, I didn't.). In fact, a recently-submitted expert disclosure by Plaintiff proves this is the case. *See* Kappenman Decl. ¶ 13, Ex. L. In this disclosure, Plaintiff's expert appears to assume that all travel time is compensable travel time. *See* Kappenman Decl. ¶ 13, Ex. L. As explained sufficiently already, this runs counter to black-letter Wisconsin statutory law as well as applicable case law. *See Kieninger v. Crown Equip. Corp.*, 924 N.W.2d 172, 178–79 (Wis. 2019) ("[Plaintiff's argument] would mean that conveying himself form home to the customer's location is integral or indispensable to the principal activity . . . But according to our statutes and regulations, that simply is not the rule.").

Thus, the only way for a factfinder to determine damages for the Travel Time Class is for the factfinder to hear testimony, on an individual basis at potentially hundreds of "mini trials," as to: (1) how often each Class member traveled, and (2) how long they traveled for; taking into consideration the travel time already paid to each Class member by Crush City. Courts recognize that this is not an efficient or economical means for a federal court to resolve state law claims. *See, e.g., Kneipp v. Re-Vi Design, LLC.*, No. 17-cv-857, 2019 WL 1244903 (W.D. Wis. Mar. 18, 2019) (denying a plaintiff's motion for

Rule 23 certification and declining to exercise supplemental jurisdiction over the state law Rule 23 class claims where the court would be required to conduct 50-100 "mini trials" to resolve the class claims). Here, because individualized questions are necessary for the determination of not only liability but also damages, Plaintiff's proposed Classes simply do not meet the predominance requirement of Fed. R. Civ. P. 23(b)(3). For these reasons the Court must deny Plaintiff's Motion for Certification.

**B.     *A Class Action is not a Superior Means of Adjudicating the Claims Presented by Plaintiff.***

In addition to the four considerations of Fed. R. Civ. P. 23(b)(3), when evaluating superiority court must consider whether "a class action is the best method of achieving a 'fair and efficient adjudication of the controversy.'" *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 259 F.3d 154, 186 (3d Cir. 2001). "If the class certification only serves to give rise to hundreds or thousands of individual proceedings requiring individually tailored remedies, it is hard to see how . . . a class action would be the superior means to adjudicate the claims." *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 577 (7th Cir. 2008).

**1.     Plaintiff Does Not Satisfy His Burden to Demonstrate Adjudication of Rule 23 Class is Manageable.**

In order for claims to be adjudicated on a classwide basis, a Plaintiff must demonstrate that adjudication on a classwide basis is manageable for the Court. *See* Fed. R. Civ. P. 23(b)(3)(D). As discussed above in Part II.A, and as recognized by Plaintiff (*see* Pl.'s Brf. at 39), individual proceedings are necessary here to allow a factfinder to make liability and damage determinations with respect to each member of the Rule 23 Classes.

35

The existence of these individualized factual issues does not, contrary to Plaintiff's empty assertions, "promote[] judicial efficiency in satisfaction of Rule 24(b)(3)" (Pl.'s Brf. at 3), but instead presents problems which Crush City argues are incapable of resolution.

Notably, Plaintiff's counsel offers no solutions to these manageability issues.  To aid the court in its determination of manageability, many courts, including the Western District of Wisconsin, encourage the plaintiff to propose a trial plan concurrently with plaintiff's motion for Rule 23 certification to demonstrate to the court that adjudication of the proposed issues is manageable as a class action.  *See Bitner v. Wyndham Vacation Resorts, Inc*., 2016 WL 7480428, at *13 (W.D. Wis. Dec. 29, 2016).  Courts in this district have consistently required plaintiffs to prove manageability of Rule 23 classes or risk denial of certification or class decertification.  *See, e.g., Espenscheid v. DirectSat USA, LLC*, No. 09-cv-625, 2011 WL 2009967 at *8 (W.D. Wis. May 23, 2011) (decertifying FLSA collective and Rule 23 class actions, citing plaintiff's inability to propose manageable trial plan).

Here, Plaintiff did not include a proposed trial plan along with his Motion for Certification, nor has Plaintiff proposed how this Court will manage resolving the individualized liability and factual determinations for two Rule 23 classes.  Looking to the definitions of the proposed Classes as well as the Plaintiff's legal theories and the requirements of Wisconsin statutory and administrative law at issue, it is clear that the instant case presents substantial manageability issues exist, as well as issues which may present a total bar to adjudication of certain Class claims.  Because Plaintiff provided no

guidance or a workable trial plan indicating how these issues would be manageably adjudicated, the Court should decline to certify Plaintiff's proposed Rule 23 Classes.

2. <u>It is Not Desirable to Concentrate the Litigation in this Forum.</u>

While separate from a Rule 23 Class Certification analysis, a supplemental jurisdiction analysis under 28 U.S.C. § 1367(c) provides further argument as to why the state law class claims at issue should not proceed in this forum. At the moment, this Court's jurisdiction over Plaintiff's state law claims is premised on **two** individual federal causes of action—the FLSA claims alleged by Plaintiff.  The United States Supreme Court has described supplemental jurisdiction as "a doctrine of discretion, not of plaintiff's right." *International College of Surgeons*, 522 U.S. 156, 172 (1997).  28 U.S.C. § 1367(c) directs that a court may decline to exercise supplemental jurisdiction over state law claims where:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  District courts have inherent authority to manage complex litigation and to determine "whether to exercise supplemental jurisdiction over pendant claims and parties." *Id.* at 308.  "[T]he question [of] whether to retain or relinquish supplemental jurisdiction over state law claims remains open 'at every stage of the litigation.'" *Kneipp v. Re-Vi Design, LLC.*, No. 17-cv-857, 2019 WL 1244903, *3 (W.D. Wis. Mar. 18, 2019) (citing *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 173 (1997)).

37

Here, Plaintiff alleged both FLSA collective and state law class claims in his initial and first amended complaints, which justified only the Court's ***initial*** exercise of jurisdiction over the state law class claims. Now, Plaintiff has abandoned his FLSA collective action, leaving only (at best) seven individual federal claims compared to the approximately 154 members of the putative state law classes. The number of potential state law class members now dwarfs the seven individual FLSA plaintiffs, presenting the quantitative hurdle to exercising supplemental jurisdiction. The considerations set forth in 28 U.S.C. § 1376(c) demonstrate why it is not desirable for this Court, or any federal court, to adjudicate the state law claims at issue. First, the state law claims at issue raise novel issues of state law in light of the fact that what is considered a "principal activity," "home community," or "commuting" under the Administrative Code is unclear. *See Wicke v. L&C Insulation, Inc.*, No. 12-cv-638-wmc, 2014 WL 2957434, at *10 (W.D. Wis. July 1, 2014) ("Unfortunately, there appears to be no case law interpreting these various [travel-related] provisions of § DWD 272.012."). Second, the time, effort, and resources required to adjudicate the state law claims would vastly outweigh the time, effort, and resources required to adjudicate Plaintiff's single individual federal cause of action such that the state-law causes of action would substantially predominate over the federal causes. As detailed above in Part II.A, there is simply no efficient means for a factfinder to determine liability and damages; the Court would have to hold over 100 "mini trials" to gather testimony from each class member.

This Court has declined to exercise supplemental jurisdiction over state law class claims under circumstances which are almost identical to this case. For example, in *Wicke*

*v. L & C Insulation, Inc*., No. 12-cv-638-wmc, 2013 WL 5276112 (W.D. Wis. Sept. 18, 2013), this Court declined to exercise supplemental jurisdiction over a plaintiff's state law class claims, citing substantial predominance concerns, where the plaintiff alleged both FLSA collective and Rule 23 class claims in his complaint, but later dropped the collective action in favor of pursuing individual FLSA claims. *Wicke*, 2013 WL 5276112, at *1. Ultimately, this Court found that it would be unwise for the Court to exercise supplemental jurisdiction over the plaintiff's state law class claims because the individual FLSA claims would "necessarily interject[] the class certification process and all the complexity that adjudicating a class action entails." *Id.* This Court further noted that the substantial effort required to adjudicate the class claims presented another "compelling reason[] for declining jurisdiction." *Id.*

This Court reached the same result again in *Kneipp v. Re-Vi Design, LLC*., No. 17-cv-857, 2019 WL 1244903 (W.D. Wis. Mar. 18, 2019). In *Kneipp* the plaintiff initially alleged both FLSA collective and state law Rule 23 class action claims, but was unsuccessful in obtaining any additional opt-in plaintiffs during the notice period, effectively ending his FLSA collective action. *Id.* at *1. The defendant challenged the district court's exercise of supplemental jurisdiction over plaintiff's state law class claims in light of plaintiff's failed collective action. *Id.* The Court found that the disproportionate and extensive time and resources which would be required of the Court to adjudicate the state law class claims justified dismissing the claims from the case, concluding that the two to four weeks required to complete the damages "mini trials" would be "a huge

39

commitment of this court's resources . . . [and] weighs heavily in favor of finding substantial predominance under § 1367(c)(2)." *Id.*

The Court is faced with a very likely and very substantial expenditure of effort, time, and resources that vastly exceeds the effort, time, and resources needed to adjudicate the individual FLSA causes of action. Crush City argues that the many factors which weigh against the Court's exercise of supplemental jurisdiction over the state law class claims also weigh against a finding that this forum is the appropriate forum to adjudicate the claims of the two putative Rule 23 state law classes.

### 3. Demonstrable Lack of Interest in the Litigation Indicates Resolution as Class Action Not Superior Method of Adjudication.

Manageability issues present in the instant case are further compounded by the demonstrable lack of interest in the litigation from putative Class members—especially in light of the fact that Class member participation is ***necessary*** for resolution of damages issues. Deposition testimony indicates some of the FLSA collective opt-in plaintiffs were not aware they were suing Crush City and did not want to be a part of the lawsuit:

| Q: | So do you think you're suing Lindus [Crush City]? |
|----|---------------------------------------------------|
| A: | Me personally? |
| Q: | Yes. |
| A: | No. |
| Q: | Is that something you would like to do? |
| A: | No, sir. |
| Q: | So you don't want to be part of a lawsuit suing Lindus? |
| A: | No. |

Pressley Depo., 19:15–23. Others were not interested in pursuing certain claims, such as the non-discretionary compensation claims:

| Q: | I think part of your claim here is you don't think the bonus was correctly applied to overtime? |
|----|----|
| A: | I'm not honestly familiar with the bonus. |
| Q: | So you don't know about the bonus piece of this lawsuit at all. Right? |
| A: | No. |

| Q: | So you don't think that's part of your claim in this lawsuit? |
|----|----|
| A: | No. |
| Q: | So in your mind is the lawsuit, your piece of it, just about the drive time policy? |
| A: | Yeah. |

Chelberg Depo., 26:19-27:1, 28:17–22.  In fact, out of 154 FLSA collective members, only twelve timely opted-in to the litigation, and of those twelve, two withdrew their consents to sue [ECF No. 61], two "informed Plaintiff's counsel that they did not wish to continue jointly prosecuting their FLSA claims as opt-in plaintiffs" [ECF No. 61 at 3], and the three were "nonresponsive" to Plaintiff's counsel [ECF No. 61 at 3].  This leaves seven individuals (plaintiff and six opt-ins) out of a total class of 154 members who remain interested in pursuing litigation against Crush City.

This leads to additional problems given the nature of Rule 23 Classes as "opt-out" classes. The Seventh Circuit has recognized that "potential members of a Rule 23(b)(3) class . . . will automatically be included in the class if they do not speak up." *Ervin v. OS Restaurant Serv., Inc*., 632 F.3d 971, 976 (7th Cir. 2011).  Here, individualized testimony is needed to prove both liability and damages.  The record strongly suggests that there is low engagement among putative Class members.  Thus, it is highly unlikely that the Court will be able to easily obtain the member-by-member testimony needed to establish liability and damages from all members that fail to "opt-out" of the class action litigation.  Given

these circumstances, Crush City argues that individualized litigation is a superior means of adjudicating the claims at issue in light of the fact that adjudication by means of a FLSA opt-in class is no longer an option.

## III.   RULE AGAINST ONE-WAY INTERVENTION PRECLUDES CLASS CERTIFICATION.

The rule against one-way intervention prevents plaintiffs from seeking class certification where a plaintiff has sought and obtained any judgment on the merits prior to a motion for class certification and until notice has been distributed to class members.  *See Stampley v. Altom Transport, Inc.*, 958 F.3d 580, 585–86 (7th Cir. 2020).  The rule recognizes that it is inherently "unfair to allow members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one."  *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974).  As explained by the United States Supreme Court, the rule seeks to prevent putative class action members from basing their decision to remain in or opt-out of participation in a class action on preliminary merit judgments prior to assuming any risk as a part of a class:

> A recurrent source of abuse under the former Rule [23] lay in the potential that members of the claimed class could in some situations await developments in the trial or even final judgment on the merits in order to determine whether participation would be **favorable to their interests**. If the evidence at the trial made their prospective position as actual class members appear weak, or if a judgment precluded the possibility of a favorable determination, such putative members of the class who chose not to intervene or join as parties would not be bound by the judgment.

*American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974) (emphasis added).  Courts have denied class certification, and even decertified classes, where a plaintiff filed a motion for summary judgment prior to the issuance of notice to the class(es).  *See Peritz v. Liberty*

*Loan Corp*., 523 F.2d 349, 354 (7th Cir. 1975) ("Inasmuch as the plaintiff here did not seek certification, and in fact affirmatively sought resolution on the merits prior to certification in the face of objections by the defendants, they have themselves effectively precluded any class certification in this case."); *Wiesmuller v. Kosobucki*, 513 F.3d 784, 787 (7th Cir. 2008) ("[T]he plaintiff, as well as the district judge, put the cart before the horse, by moving for class certification after moving for summary judgment."); *Costello v. BeavEx, Inc*., 810 F.3d 1045, 1058 (7th Cir. 2016) ("It bears noting, however, that Plaintiffs, by moving for class certification and partial summary judgment at the same time, came dangerously close to precluding review of the class certification decision. Had the district court chosen to decide Plaintiffs' motion for partial summary judgment prior to deciding class certification, the rule against one-way intervention may have precluded certification."); *Stampley v. Altom Transport, Inc*., 958 F.3d 580, 585-86 (7th Cir. 2020) ("The district court first noted, correctly, that Stampley's decision to [move for summary judgment] before notice had gone out to the class raised the specter that the class would have to be decertified pursuant to the rule of one-way intervention.").

Here, Plaintiff had the ability to move for class certification at any time up to September 11, 2020. [ECF No. 52]. Likewise, Plaintiff had until September 21, 2020 to move for summary judgment under the time frame set forth in Rule 56. *See* Fed. R. Civ. P. 56(b). Plaintiff did not, however, structure his motions such that his Motion for Class Certification would or could reasonably be determined prior to Plaintiff's motion for partial summary judgment; Plaintiff filed both motions simultaneously on September 11, 2020, and even presented his arguments for both in the same brief. [ECF Nos. 65–72]. Thus,

Plaintiff has indicated, both in his filing of motions for summary judgment on behalf of Plaintiff and the Classes, and in the time and effort put forth by Plaintiff in his respective motions, that he intends to seek a determination on the merits over certification of the Rule 23 classes.  Plaintiff has already chosen the outcome of his certification motion; the Court should follow his lead and deny Plaintiff's Motion for Certification.

## IV.   PLAINTIFF'S CLASS DEFINITIONS ARE IMPROPER FAILSAFE CLASS DEFINITIONS.

It is well-known among class action counsel that "[a] Rule 23 class definition must be "ascertainable, precise, and objective." *Blihovde v. St. Croix*, 219 F.R.D. 607, 614 (W.D. Wis. 2003).  Plaintiff has defined the two Rule 23 Classes he seeks to represent as follows:

> **Travel Time Class**: All hourly-paid, non-exempt Technician Employees in such positions as Laborer, Technician, Foreman, and Crew Leader who were employed by Defendant within the two (2) years prior to this action's filing ***who have not been compensated for all hours*** worked as a result of Defendant's failure to compensate said employees for compensable travel time during the workday.

> **Non-Discretionary Compensation Class:** All hourly-paid, non-exempt Technician Employees in such positions as Laborer, Technician, Foreman, and Crew Leader who were employed by Defendant within the two (2) years prior to this action's filing who received non-discretionary forms of compensation, such as goal, performance, and installation bonuses, and ***who have not been compensated for all hours worked in excess of forty (40) hours in a workweek at the proper, correct, and/or lawful overtime rate of pay*** as a result of Defendant's failure to include all such non-discretionary forms of compensation in said employees' regular rates of pay for overtime calculation purposes.

Pl.'s Brf. at 1–2 (emphasis added).  Plaintiff's Class definitions are prime examples of impermissible failsafe class definitions.  A failsafe class definition arises from the rule against one-way intervention and is defined as a class definition which is "defined so that

44

whether a person qualifies as a member depends on whether the person has a valid claim." *Messner v. Northshore University HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012). In the words of the Seventh Circuit, "[s]uch a class definition is improper because a class member either wins, or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Id.* Such class definitions are prohibited because they "would fail to provide the final resolution of the claims of *all* class members that is envisioned in class action litigation." *Young v. Nationwide Mut. Ins. Co*., 693 F.3d 532, 538 (6th Cir. 2012) (emphasis in original).

Plaintiff's Class definitions define the classes as employees "who have not been compensated for all hours worked as a result of Defendant's failure to compensate said employees for compensable travel time," and employees who "have not been compensated for all hours worked in excess of forty (40) hours in a workweek at the proper, correct, and/or lawful overtime rate of pay." Pl.'s Brf. at 1–2. Defining a wage loss class to include only those people who "have not been compensated for all hours worked" improperly defines the classes as including only those class members with a valid claim. The Seventh Circuit upheld lower court's refusal to certify a similarly-defined class in *McCaster v. Darden Restaurants, Inc*., 845 F.3d 794 (7th Cir. 2017). In *McCaster*, plaintiffs, two employees of Darden Restaurants, "sought to represent a class of '[a]ll persons separated from hourly employment with [Darden] in Illinois between December 11, 2003, and the conclusion of this action[] who were subject to Darden's Vacation Policy . . . *and who did not receive all earned vacation pay benefits*.'" *Id.* at 799 (emphasis in original). The Seventh Circuit found that the proposed definition "plainly turns on whether the former

employee has a valid claim," concluding "[t]hat is a classic fail-safe class, and the district judge properly rejected it." *Id.*  Plaintiff's proposed Class definitions which define the Rule 23 Classes as consisting of those employees "who have not been compensated for all hours worked" suffer from the same defect as the class definition presented by the Plaintiff in *McCaster* and clearly attempt to define the Classes in such a way as to only include those Crush City employees that have a valid claim.  As such, such definitions are improper and must be rejected by the Court.

## CONCLUSION

For the foregoing reasons, Plaintiff has failed to satisfy his burden to demonstrate that Class certification is warranted under Fed. R. Civ. P. 23.  Crush City respectfully requests this court deny Plaintiff's Motion for Certification and allow the case to proceed to adjudicate the individual claims of Plaintiff Zachary Morgan.

Dated: October 12, 2020          By: *s/Martin D. Kappenman*
                                                 Thomas R. Revnew (#1023265)
                                                 Martin D. Kappenman (MN #320596) Pro Hac Vice
                                                 PETERS & REVNEW, KAPPENMAN & ANDERSON, P.A.
                                                 7300 Metro Boulevard, Suite 500
                                                 Minneapolis, MN 55439
                                                 Telephone: (952) 896-1700
                                                 Facsimile: (952) 896-1704
                                                 trevnew@prkalaw.com
                                                 mkappenman@prkalaw.com

                                                 ATTORNEYS FOR DEFENDANT, CRUSH CITY CONSTRUCTION, LLC