IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ZACHARY MORGAN
on behalf of himself and all
others similarly situated,

|  |  |  |
|---|---|---|
| | Plaintiffs, | OPINION AND ORDER |
| v. | | 19-cv-27-wmc |
| CRUSH CITY CONSTRUCTION, LLC, | | |
| | Defendant. | |

---

Plaintiff Zachary Morgan claims that his former employer, defendant Crush City Construction LLC ("Crush City"), violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Wisconsin's Wage and Hour Laws, Wis. Stat. Ch. 109. Before the court are plaintiff's motions to: (1) amend his complaint to dismiss his FLSA *collective* action and add a number of individually named plaintiffs (dkt. #56); (2) certify two Rule 23 classes for violations of Wisconsin law (dkt. #66); and (3) seek partial summary judgment (dkt. #65).[1] For the reasons discussed below, the court will: grant plaintiff's motion to amend his complaint; deny in part and grant in part his motion for summary judgment; and deny his motion for class certification.

---

[1] The court has also considered plaintiff's essentially frivolous "emergency motion to strike defendant's memorandum of law in opposition to plaintiff's motion for class certification" on the grounds that it was untimely. (Dkt. #78.) When plaintiff filed its motion for class certification, the ECF system automatically set October 2, 2020, as the response deadline. However, by previous order, Judge Crocker had already set October 12, 2020, as the deadline. Plaintiff contends that the former is the correct date, defendant the latter, but even assuming defendant's response were untimely, it was the product of "excusable neglect," and plaintiff has not suffered any prejudice as a result of it, as he had the opportunity to fully respond to defendant's filing. Finally, the notion that plaintiff and his counsel would be entitled to certification of a class based on a technical default, or even that the court would ignore meritorious arguments against class certification on that basis, borders on the absurd. Accordingly, plaintiff's motion will be denied.

FACTS

### A. Parties

Crush City d/b/a Lindus Construction is a Wisconsin construction company owned by Adam, Alex, and Andy Lindus.  Crush City employs "Technician Employees" for the purpose of performing work related to residential construction.  All Technician Employees were non-exempt and paid either on an hourly basis or on a "piecework" basis.  Named plaintiff Zachary Morgan worked at Crush City as a Technician Employee from May 2017 until September 2018.

Crush City currently employs approximately eighty to one-hundred Technician Employees, and during the two-year period leading up to the filing of the present complaint, it consistently maintained a workforce of at least seventy employees, including Technician Employees.  During this same period, all Technician Employees reported to Foremen/Crew Leaders, who then reported to a Manager, who in turn reported to Adam Lindus.  Similarly, Crush City controlled the terms and conditions of its Technician Employees' employment; established all relevant work rules, policies, and procedures; and established its Technician Employees' work schedules, as well as tracked and recorded their hours of work.

### B. Written Work Policies

Crush City also provided a company handbook, titled "Company Manual," which was provided to all Crush City employees, included Morgan.

This manual contained in relevant part the following provisions:

- The "Working Overtime" policy stated in part, "Overtime, for hourly employees, is defined as hours worked in excess of 40 hours based on a Monday through Sunday workweek," and the "[o]vertime wage is one and one-half (1.5) times an employees' regular rate."  (Company Manual (dkt. #23-6) 10.)

- The "Business Travel Reimbursement" policy stated, "The use of vehicles other than Company-owned vehicles, for approved purposes, will be reimbursed for mileage at the current Company rate. Vehicles used to travel to and from job sites and to and from their personal residence do not qualify."  (Id. at 11.)

- The "Employee Parking Policy" section stated, in part, "You are encouraged to use our designated parking lot. . . .  Please park in either the south or east sides of the facility.  Please lock your car each day and do not leave any valuables visible inside.  The Company is not responsible for any loss or damage to theft, vandalism, or collision."  (Id. at 28.)

In addition to this Company Manual, plaintiff Morgan and the other Technician Employees were provided with a documented titled "Drive Time Policy," which was written by Crush City's legal counsel and issued in or around 2015.  This policy remained substantively unchanged in the three-year period before the filing of plaintiff's complaint. In relevant part, this policy provided:

- "Drive Time Is Allowable" for: (1) "[p]ulling a trailer to a jobsite – Driver Only"; (2) "[a]ttending a scheduled meeting at the shop and then traveling to the jobsite – Driver & Rider"; (3) "[d]riving from the shop to jobsite after receiving instructions or picking up material – Driver Only"; (4) "[d]riving from the shop to jobsite after loading company vehicle – Driver Only"; (5) "[d]riving from the jobsite back to the shop to unload material – this should be performed the following day if possible"; (6) "[d]riving from supplier (store) on way to the jobsite after leaving the shop"; and (7) "[d]riving from home to shop with material that needs to be disposed of in a dumpster."  (Drive Time Policy (dkt. #23-8).)

- "Drive Time is Not Allowable" for: (1) "[d]riving from home and picking up rider at rideshare and driving to jobsite"; (2) "[d]riving to the shop to pick-up other crew member"; or (3) "[d]riving from jobsite to shop to drop off crew member."  (Id.)

- "Lindus also has GPS units in all vehicles to review your recorded times for

verification and timekeeping procedures, so you are required to enter all information completely and accurately, due to it may be subject to review and adjusting by management." (*Id.*)

As part of its standard orientation and onboarding process for all Technician Employees, Crush City required (1) employees to review each of these three policies and (2) execute and return an acknowledgement form confirming receipt of the policies.

### C. Work Hour Tracking

During the three-year period before plaintiff's complaint, Crush City instructed all Technician Employees to track or record their hours of work electronically using a software program known as Salesforce. At the end of each workweek, Technician Employees would submit recorded hours worked for review and approval to their department's Manager, who was then expected to review their Technician Employees' submitted hours of work for accuracy and approval. Each Manager had the ability to review GPS data for the company-owned vehicles and would sometimes compare a worker's reported times with the GPS records. However, the GPS records did not reflect who traveled in the vehicle or who was driving the vehicle. Accordingly, if a Manager determined a discrepancy or issue existed in a Technician Employee's hours of work as recorded, the Manager returned the timecard to the Technician Employee for alteration or correction.

Crush City rejected recorded travel time in at least the following incidents:

- On at least one occasion, Benjamin Miller, the Siding Department Manager, instructed Morgan to change and resubmit his hours worked because he apparently claimed drive time "when [he] wasn't supposed to" or inadvertently logged-into the "wrong job."

4

- On at least two occasions, Technician Employee Caleb Davis' timecards were rejected for apparently incorrectly including non-compensable travel time on his timecard.

- On at least one occasion, Technician Employee Ryan Miller's timecard was rejected for including travel time because "only one personn [sic] is allowed drive time and that would be the lead seeing as he is driving the van."

The jobsites at which Crush City's Technician Employees worked were typically forty-five minutes to two hours away from Crush City's shop in Baldwin, Wisconsin. If a Technician Employee drove his or her personal vehicle to the jobsite, Crush City did *not* reimburse that employee for any costs or expenses incurred for that travel.

The parties dispute what Crush City's expectations were of its employees regarding driving to the jobsites. According to plaintiff, at the beginning of each workday, Technician Employees reported to the shop where they met with their Managers, held formal and informal meetings, loaded any necessary materials and supplies into their company-owned vehicles, and then travelled alone or with other crew members to their jobsites in company-owned vehicles. And, at the end of the work day, the Technician Employees typically travelled from the jobsite back to the shop to load/unload materials, unload and deposit garbage/waste from the jobsite, meet with Managers, drop off coworkers, and drop off the company-owned vehicles themselves, among other things. Defendant disputes this; instead, Crush City contends that while on *some* workdays Technician Employees reported to the shop before and after their work at the jobsite to attend meetings or pick up and drop off tools, these activities did not happen "each" workday as plaintiff contends.[2]

---

[2] Plaintiff arguably at least contradicts his own proposed fact by later proposing the following:
> Unless they first attended a meeting or loaded a company-owned vehicle at the shop, Defendant instructed its Technician Employees, including Plaintiff, to only record travel

5

### D. Overtime Calculations

On occasion, some Technician Employees worked in excess of forty hours per workweek.  During the time relevant to this suit, Crush City compensated its Technician Employees on a weekly basis via check and paid performance bonuses to some of its Technician Employees on a monthly basis.  On average, the bonuses paid to employees in the Siding, Decking, and Windows and Doors departments totaled approximately $300.  Adam Lindus explained that these bonuses were paid on the following basis:

> So the bonuses were based off of goals by dollars installed for the month. At the beginning of each month, we set goals for the department. We then divide that out by the amount of crews, which then sets the crew goal, and if they hit that goal, there is a percentage in which we pay based on the dollar amount installed. So let's say the goal is $60,000, and they hit $60,001, they get paid a percentage of that dollar amount [the totality of the $60,001]. . . .  And if it's under that, then they don't get it.

(Lindus Dep. (dkt. #76-10) 59-62.)

The purpose of these bonus payments was to "incentivize technicians for the quality or quantity of work performed."  (*Id.* at 62.)  The eligibility for and the criteria applicable to these bonuses were announced and communicated to employees by their Managers.  Moreover, there is no dispute that Crush City did *not* include the bonuses it paid to its Technician Employees in calculating the overtime rate until late 2019.  In particular,

---

time between the shop and the jobsite at the beginning of the workday if they were driving a company owned vehicle while hauling materials or supplies between Defendant's shop and the jobsite or performing service calls, *which was infrequent.*
(Pl.'s PFOFs (dkt. #73) ¶ 73 (emphasis added).)  However, since it is unclear whether plaintiff was referring to "infrequently" being required to attend meetings at the shop to begin the day *or* loading and driving a company owned vehicle from the shop to job site *or* both, this concession is not enough to the parties' apparent dispute of material fact.

during his employment, Morgan was paid three performance bonuses totally $1,500.59: (1) a bonus of $409.73 on May 4, 2018; (2) a bonus of $482.51 on July 13, 2018; and (3) a bonus of $608.35 on August 3, 2018.  In the four workweeks in the month of July 2018, Plaintiff worked a total of 53.75 hours of overtime.

At some point in late 2019, Crush City began including non-discretionary compensation in its Technician Employees' regular rates of pay for overtime calculation and compensation purposes.  Crush City also "went back to January 1, 2018, and calculated all of the overtime pay into – or their bonus pay into their overtime pay, and had corrected and issued checks for the mistake that was made." (Lindus Dep. (dkt. #76-10) 55.)  At the same time, Crush City did *not* make any corrections or cut any checks for overtime wages owed prior to January 1, 2018.  Accordingly, in or about late December 2019, Morgan received a letter from Crush City signed by Adam Lindus stating:

> With year-end around the corner we are auditing our own payroll records and noticed some small oversights regarding paid-bonuses that impacted the amount of overtime payments that we wanted to correct.  Enclosed please find a check and a document describing the amounts.

(Walcheske Second Decl., Ex. 10 (dkt. #68-10).)  Enclosed with the letter was a check for $98.47 and a table reflecting the overtime calculations.  According to Adam Lindus, the checks did not include interest, and he did not know if they included liquidated damages.

### E.  Procedural History

On January 11, 2019, plaintiff filed the present lawsuit, which he amended several days later.  On January 3, 2020, the court then granted plaintiff's motion for conditional certification of an FLSA class.  (Dkt. #40.)  Notice was then sent out to members of the

7

conditional collective, and ultimately fourteen individuals timely opted into the litigation. However, eight of these opt-in plaintiffs subsequently rescinded their consent to sue forms, and in light of the "paucity of participation in the collective," plaintiff moved to file a second amended complaint to eliminate the FLSA collective claims, and rather add the remaining six opt-in plaintiffs as named plaintiffs to the suit. Plaintiff also filed the pending motions for summary judgment and for certification of two Rule 23 classes.

OPINION

## I.  Motion to Amend

The court first takes up plaintiff's motion to file a second amended complaint. Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave" to amend a pleading "when justice so requires." *See also Soltys v. Costello*, 520 F.3d 737, 742-43 (7th Cir. 2008) (discussing the standard). While such a motion is not automatically granted, the Supreme Court directs that a party should be allowed to amend its pleadings "[i]n the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Whether to grant or deny leave to amend is within the discretion of the district court. *Id.*

Here, plaintiff seeks to file a second amended complaint for the purpose of (1) eliminating his FLSA collective allegations, while maintaining his Rule 23 class claims, (2)

8

adding additional, named plaintiffs, and (3) conforming his complaint to the evidence. (Mot. to Amend (dkt. #56) 1.)   Defendant does not appear to oppose plaintiff's elimination of the FLSA collective allegations, nor the modifications to conform to the evidence, but does oppose the addition of the new plaintiffs.

Plaintiff's motion to amend is motivated primarily by new information discovered during the course of this litigation -- namely, the limited response to the FLSA notice. While the court has very little information on the proposed, new plaintiffs, the motion to amend was filed within a reasonable time after plaintiff learned of the poor FLSA response, and there is no indication of bad faith or dilatory motive.  Additionally, his motion came over a year before the original close of discovery, and any needed discovery can be accommodated in the rescheduling.  Finally, plaintiff asserts no new claims or theories; instead, he seeks only to permit those individuals who have a potential claim against defendant to join in the lawsuit.

To be sure, defendant may face some prejudice by the addition of new plaintiffs in that discovery from those individuals may be necessary.  However, "virtually every amendment of a complaint results in some degree of prejudice to a defendant. . . . Thus, it is not enough that a defendant will suffer prejudice from the amendment; that prejudice must be undue." *Conroy Datsun Ltd. v. Nissan Motor Corp. in U.S.A.*, 506 F. Supp. 1051, 1054 (N.D. Ill. 1980).  Here, the court does not consider the prejudice to defendant to be undue, and overall finds that plaintiff's requested amendment is proper.  Accordingly, plaintiff's motion to file a second amended complaint is granted.

## II. Partial Summary Judgment

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view all facts and draw all inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Here, plaintiff seeks summary judgment as to his own FLSA and Wisconsin Wage and Hour claims.[3] In particular, he claims that Crush City failed to pay for all of his compensable travel time, and further failed to calculate non-discretionary bonuses into his regular rate of pay for overtime, resulting in underpayments. The court addresses each claim separately below

### A. Travel Time

The "core requirement" of the FLSA "can be reduced to a simple and now uncontroversial proposition: employers must pay their employees a wage for all of the 'work' that they do." *Spoerle v. Kraft Foods Glob., Inc.*, 527 F. Supp. 2d 860, 862 (W.D. Wis. 2007) (citing 29 U.S.C. §§ 206, 207; *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1285 (10th Cir. 2006); *Alvarez v. IBP, Inc.*, 339 F.3d 894, 902 (9th Cir. 2003)). An employer does not have to *require* work for it to be compensable; the work need only be "suffered or permitted." 29 C.F.R. § 785.11. Thus, an employer that knows or has reason to know that an employee is working cannot sit back and accept the benefits of the work

---

[3] Originally, plaintiff (1) moved for summary judgment as to Morgan's individual FLSA claims and (2) moved for summary judgment as to similar claims brought under Wisconsin Wage and Hour laws on behalf of the putative class. However, because the court is denying plaintiff's request for class certification, the court will simply consider the motion in relation to plaintiff Morgan.

without compensating for it.  §§ 785.11, 785.13.  Similarly, if an employer does not want work performed, it has a duty "to exercise its control and see that the work is not performed." § 785.13.

Although the FLSA itself neither defines "work" nor specifies what hours count as compensable work time, *IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005) (citing 29 U.S.C. § 201 et seq.), the Portal-to-Portal Act dictates what travel time is compensable.  29 U.S.C. § 254.  Under the Act, an employee's ordinary commute to and from the workplace is generally not compensable work time.  *See* 29 U.S.C. § 254(a); 29 C.F.R. § 785.35.  Since Wisconsin law regarding travel time mirrors that in the FLSA, the court considers these claims together.  *See Ricard v. KBK Servs., Inc.*, No. 15-CV-299-JDP, 2016 WL 4691608, at *5 (W.D. Wis. Sept. 7, 2016) ("As under federal law, Wisconsin follows the general rule that normal home-to-work commuting is not compensable.").

Specifically, the applicable federal regulation states that:

> An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment.  This is true whether he works at a fixed location or at different job sites.  Normal travel from home to work is not worktime.

29 C.F.R. § 785.35; *see also* Wis. Admin. Code § DWD 272.12(2)(g)2 (identical to 29 C.F.R. § 784.35).  Similarly, the U.S. Department of Labor explains in an opinion letter that commuting times of an hour or more is not "extraordinary," and thus, are non-compensable.  *See* Opinion Letter Fair Labor Standards Act (FLSA), 1999 WL 1002360, at *1; *see also Ricard v. KBK Serv., Inc.*, No. 15-cv-299-jdp, 2016 WL 4691608 (W.D. Wis. Sept. 7, 2016) (90-mile commute to job non-compensable).  Additionally, "an employer's

decision to provide transportation and designate a meeting location does not transform ordinary commuting into hours worked." *Pietrzycki v. Heights Tower Serv., Inc.*, 290 F. Supp. 3d 822, 837 (N.D. Ill. 2017); *see also Wren*, 2009 WL 2612307, at *6 ("[w]here employees travel together to a work site, either in an employee's vehicle or a company-owned vehicle, unless the employees are performing activities that are integral to their principal activities while *en route* to the work site," that travel time is noncompensable).  At the same time, travel that is "all in the day's work" may be compensable:

> Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked. Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice . . . .

29 C.F.R. § 785.38; *see also* Wis. Admin. Code § DWD 272.12(2)(g)5 (identical to 29 C.F.R. § 784.38).

Here, plaintiff argues that "*all instances* of Plaintiff's travel time between Defendant's shop and the jobsite were compensable."  (Pl.'s Br. (dkt. #67) 24.)   However, as just explained, this overstates the law:  a normal commute that does not involve extraordinary travel time is not compensable, even if the employer provides transportation and designates a meeting location.  Thus, Crush City did not violate the FLSA in not compensating plaintiff Morgan for simply traveling to the shop, then traveling straight from the shop to the jobsite, or doing the reverse at the end of his work day, provided the travel time was

not "extraordinary."[4]  In contrast, as also discussed above, if plaintiff Morgan had traveled to the shop to attend a work meeting or pick up tools there, *before* heading to the job site, that travel time would be compensable, as it is "all in the day's work."  29 C.F.R. § 785.38, Wis. Admin. Code § DWD 272.12(2)(g)5.

Here, however, plaintiff's summary judgment argument is focused on the overall travel time from the shop to the jobsite and vis versa, *regardless* of whether he attended a meeting or picked up/dropped off tools at the shop.  Since a claim to *all* travel time to and from the shop is overbroad, *and* plaintiff has failed to proffer evidence supporting what appears would be a viable claim to some subset of that time, he has not proven his entitlement to summary judgment as to any travel time.

### B. Overtime and Non-Discretionary Bonuses

The FLSA and Wisconsin law also generally requires employers to compensate its employees "at a rate not less than one and one-half times the regular rate at which he is employed" for time worked in excess of forty hours in a workweek.  29 U.S.C. § 207(a)(1); Wis. Stat. § 103.025(1)(c); Wis. Admin. Code § DWD 274.03.  While there appears to be agreement that defendant Crush City paid one and one-half times plaintiff's regular hourly rate for hours above 40 per week, the wrinkle here is that under the FLSA, non-discretionary bonuses are *included* in calculating the employee's regular rate of pay.  *See* 29 U.S.C. § 207(e); 29 C.F.R. § 778.208.  In particular:

---

[4] Of course, if the travel time were extraordinary within the meaning of state and federal law, then plaintiff may have a claim.  However, he has not made this claim, at least at summary judgment, the court may not consider it further for purposes of deciding plaintiff's motion.

> Bonuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay.  Most attendance bonuses, individual or group production bonuses, bonuses for quality and accuracy of work, bonuses contingent upon the employee's continuing in employment until the time the payment is to be made and the like are in this category; in such circumstances they must be included in the regular rate of pay.

29 C.F.R. § 778.211(c).  Wisconsin law is similar.  *See Kuhnert v. Advanced Laser Machining, Inc.*, 2011 WI App 23, ¶ 13, 331 Wis. 2d 625, 633, 794 N.W.2d 805 (neither the statutes nor the administrative code define "regular rate of pay" or how to calculate it, but Wisconsin courts have given "great weight deference" to the interpretation of this phrase published by Wisconsin Department of Workforce Development ("WDWD")).[5]

Here, plaintiff claims that his nondiscretionary bonuses were not properly included in his regular rate of pay when calculating his overtime rate.  Moreover, the undisputed facts show that:  (1) Morgan received at least three bonus payments in 2018; (2) those bonuses were based on specific, non-discretionary performance goals; and (3) these bonuses were *not* included in his regular rate of pay for the purposes of calculating his overtime.  Defendant does not meaningfully dispute these facts; indeed, Crush City appears to have admitted its error, having issued Morgan a check for underpaid overtime.  Since these checks apparently did not contain interest or liquidated damages, nor is there evidence that plaintiff actually cashed the check, this claim is not moot.  *Chapman v. First Index, Inc.*,

---

[5] The WDWD's interpretation provides, in relevant part, that the regular rate "includes all remunerations paid to or on behalf of the employee such as commissions, nondiscretionary bonus, premium pay, and piecework incentives."  Wisconsin Hours of Work & Overtime Laws Frequently Asked Questions, https://dwd.wisconsin.gov/er/laborstandards/overtimefaq.htm (last checked July 12, 2022).

796 F.3d 783, 786 (7th Cir. 2015).   Thus, plaintiff has demonstrated at summary judgment that defendant is liable for failure to pay overtime based on all remunerations, including bonuses.   Of course, plaintiff will need to proffer proof of the difference before being awarded damages.

## III.  Class Certification

This leaves plaintiff's motion for certification of two Rule 26 classes for alleged violations of Wisconsin law.   Rule 23 of the Federal Rules of Civil Procedure sets forth the basic procedural requirements for class action lawsuits.   Fed. R. Civ. P. 23.   Before certification, a proposed class must meet the four threshold requirements of Rule 23(a) -- numerosity, typicality, commonality, and adequacy of representation -- then at least one of the requirements of Rule 23(b).   Fed. R. Civ. P. 23(a), (b).   Here, plaintiff seeks certification under Rule 23(b)(3), which requires an additional showing of "predominance" and "superiority."

"Rule 23 does not set forth a mere pleading standard.   A party seeking class certification must affirmatively demonstrate his compliance with the Rule -- that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."   *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original).   For this reason, a trial court must engage in a "rigorous analysis" to ensure that the requisites of the Rule are satisfied.   *Id.*

Here, plaintiff seeks certification of the following classes:

Travel Time Class: All hourly-paid, non-exempt Technician Employees in such positions as Laborer, Technician, Foreman, and Crew Leader who were employed by Defendant within the

15

two (2) years prior to this action's filing who have not been compensated for all hours worked as a result of Defendant's failure to compensate said employees for compensable travel time during the workday.

Non-Discretionary Compensation Class: All hourly-paid, non-exempt Technician Employees in such positions as Laborer, Technician, Foreman, and Crew Leader who were employed by Defendant within the two (2) years prior to this action's filing who received non-discretionary forms of compensation, such as goal, performance, and installation bonuses, and who have not been compensated for all hours worked in excess of forty (40) hours in a workweek at the proper, correct, and/or lawful overtime rate of pay as a result of Defendant's failure to include all such non-discretionary forms of compensation in said employees' regular rates of pay for overtime calculation purposes.

(Pl.'s Br. (dkt. #67) 1-2.)

As explained below, various problems prevent certification of either class. As an initial matter, both classes are defined as improper, "fail-safe" classes "so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012). "Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Id.* Denial on this basis alone would be warranted. *See Randleman v. Fid. Nat. Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011) (noting that an improper fail-safe class provided an "independent ground for denying class certification").

Even if the definition were revised, plaintiff cannot establish commonality of the travel time class. As discussed above, plaintiff's claim for *all* travel time to and from defendant's shop overstates the law. While there *could* be other individuals who were not

16

reimbursed for "extraordinary" travel time or for travel time incurred as part of "a day's work," plaintiff does not propose such nuanced classes. Regardless, litigating these claims as a class action would be inappropriate on their face, since each necessarily involve individualized questions. For example, the record suggests that actual travel times varied substantially from employee to employee, as well as job-site to job-site. Thus, determining whether such time was "extraordinary" on a class-wide basis would be unworkable. Similarly, the available facts indicate that employees did not *always* engage in work at the shop before leaving for the job site -- whether for a meeting or to pick up tools -- just as they did not necessarily return after the day's work before heading home. *See Boelk v. AT&T Teleholdings, Inc.*, No. 12-cv-40-bbc, 2013 WL 261 261265 (W.D. Wis. Jan. 10, 2013) (denying class certification because "[d]etermining whether a given employee suffered a meal break violation will depend largely on numerous highly fact-specific inquiries as to the reason why a technician worked during all or part of his meal break on a particular day").

Next, Morgan's adequacy as a class representative has been legitimately called into question during the discovery process. A class representative's "[p]ersonal characteristics," including their perceived "credibility and integrity," has "a direct bearing on [the representative's] ability to adequately represent members of the class." *Davidson v. Citizens Gas & Coke Utility*, 238 F.R.D. 225, 229 (S.D. Ind. 2006). Yet Morgan has been convicted of multiple crimes, including felony witness intimidation, felony theft, and felony burglary; he could not answer numerous, material questions posed to him during his deposition, including on central issues such as when he would start his workday or when he would be

required to pick up materials from the shop; and he admitted to working "a day or two" for defendant Crush City while he was under the influence of methamphetamine.  (*See* Def.'s Opp'n (dkt. #77) 22-24 (citing Morgan Dep. (dkt. #76-4).).)  These facts all pose credibility and integrity issues, suggesting that Morgan is likely not an adequate class representative.

Finally, given the very small size of the FLSA opt-in collective, certification of an opt-out class for a supplemental state claim would not be justified.  Were this court "to certify a class action for [plaintiff's] supplemental state claims based on the same facts and issues underlying [plaintiff's] federal claim, we could very well be left 'with the rather incongruous situation of an FLSA 'class' including only a tiny number of employees . . . with a state-law class that nonetheless includes all or nearly all of the companies' present or former employees.'"  McClain v. Leona's Pizzeria, Inc., 222 F.R.D. 574, 577 (N.D. Ill. 2004) (quoting *Muecke v. A-Reliable Auto Parts & Wreckers, Inc.*, No. 01 C 2361, 2002 WL 1359411, at *2 (N.D. Ill. June 21, 2002)).

For all of these reasons, class certification is not appropriate in this case.


ORDER

IT IS ORDERED that:

1) Plaintiff's motion to amend his complaint (dkt. #56) is GRANTED.

2) Plaintiff's motion for partial summary judgment (dkt. #65) is DENIED IN PART and GRANTED IN PART

3) Plaintiff's motion to certify Rule 23 classes (dkt. #66) is DENIED.

4) Plaintiff's "emergency motion to strike defendant's memorandum of law in opposition to plaintiff's motion for class certification" (dkt. #78) is DENIED.

18

5) The following schedule will apply:

      Disclosure of experts: Plaintiffs:  September 2, 2022

          Defendant: October 19, 2022

      Discovery Cutoff: October 21, 2022

      Deadline for filing dispositive motions:  October 28, 2022

      Settlement Letters:  February 3, 2023

      Motions *in limine* and Rule 26(a)(3) Disclosures:  February 3, 2023

      Responses to all motions *in limine* and disclosures: February 17, 2023

      Final Pretrial Conference:  March 1, 2023, at 3:00 p.m.

      Trial:  March 20, 2023, at 9:00 a.m.

Entered this 13th day of July, 2022.

                  BY THE COURT:

                  /s/

                  _____

                  WILLIAM M. CONLEY
                  District Judge